UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Abdullah Saajoh Sall,

     Plaintiff,

     v.                                                    Civil Action No. 2:20–cv–214-cr

Sarah Fair George et al.,

     Defendants.

## REPORT AND RECOMMENDATION
### (Docs. 39, 40)

     Plaintiff Abdullah Saajoh Sall, proceeding *pro se*, brings this action under 42 U.S.C. § 1983

against Defendants Sarah George, the Chittenden County State's Attorney's Office (CCSAO),

Seven Days Newspaper, the Vermont State Police, "Chittenden County Police Departments," the

City of Burlington, Chittenden County, Local Motion, the Greater Burlington YMCA, and others.[1]

(Doc. 7 at 1–3, 5.)  Sall alleges that starting in 2012, he experienced discrimination in Chittenden

County, Vermont based on his race, religion, and national origin, causing him chronic trauma,

depression, and anxiety.  (*Id.* at 3–5.)  Sall claims that "[t]he City of Burlington and Chittenden

[County] as a whole . . . is a racist safe h[]aven city with a culture and tradition of subtle racism as

the underbelly of the community" (Doc. 7-2 at 37), and that "[t]he residents of Burlington,

Chittenden County, and Vermont convey their racial disdain in so many different ways" (*id.* at 38).

---

[1]  In the caption of the Amended Complaint, Sall identifies only five Defendants: "Chittenden County Townships, Chittenden County State Attorney's Office, Local Motion, Chittenden Police Departments, [and] Seven Day[s]."  (Doc. 7 at 1.)  On pages two and three of the Amended Complaint, Sall names several other Defendants, including Chittenden County State's Attorney Sarah George and the Vermont State Police, among others.  (*Id.* at 2–3.) In his prayer for relief, Sall references additional Defendants, including the Greater Burlington YMCA.  (*Id.* at 5.)  Sall attaches to the form Amended Complaint a 59-page document entitled "Amended Complaint, Abdullah Sall Self-[I]ntro,"in which he lists some 35 Defendants, including the Defendants identified above, 16 "Chittenden County townships," and 10 "Chittenden County Police Departments."  (Doc. 7-2 at 7.)

As a black Muslim man who immigrated to the United States from Africa (*id.* at 3), Sall alleges that he has been "made to pay the price" in a culture that "sees black m[e]n as offenders, aggressive, or violent criminals" (*id.* at 38). Sall seeks $300 million dollars in restitution, to "help [account for] all the injustices [he] was made to endure." (Doc. 7 at 5.)

This Report and Recommendation addresses Defendant Seven Days' Motion to Dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Doc. 39), and its Special Motion to Strike the Amended Complaint under 12 V.S.A. § 1041 (Doc. 40).[2] For the reasons discussed below, I recommend GRANTING the Motion to Dismiss (Doc. 39), without leave to amend, and DENYING the Special Motion to Strike (Doc. 40) as moot given the recommended ruling on the Motion to Dismiss.

## Relevant Facts and Procedure

Sall initially filed this action in the District of Massachusetts on November 12, 2020. (Doc. 1.) Approximately one month later, the case was transferred to this District. (Docs. 3, 5.) On January 19, 2021, Sall filed the Amended Complaint. (Doc. 7.) Sall attaches two documents to his Amended Complaint: (1) a "Final Determination" of the Vermont Human Rights Commission (HRC), dated June 25, 2020, finding that the "Department of State's Attorneys and Sheriffs [and] the Chittenden County State's Attorneys' Office . . . illegally discriminated against . . . Sall . . . on the basis of national origin, race, and skin color, in violation of Vermont's Fair Employment Practices Act" (Doc. 7-1 at 2); and (2) a document titled "Amended Complaint Abdullah Sall Self-[I]ntro," which provides the primary factual basis for Sall's allegations in this case (Doc. 7-2).

---

[2] Under 12 V.S.A. § 1041(a), Vermont's Strategic Lawsuit Against Public Participation law, "[a] defendant in an action arising from the defendant's exercise, in connection with a public issue, of the right to freedom of speech . . . may file a special motion to strike."

The first document, referred to in this Report and Recommendation as the HRC Report,[3] states that Sall is Muslim and "of African descent" (Doc. 39-1 at 2), and describes in detail the facts underlying Sall's allegations against Defendants Sarah George and the CCSAO (*see id.* at 2–55). Specifically, the HRC Report states that sometime between February 2016 and January 2017, then-Chittenden County State's Attorney TJ Donovan hired Sall as a receptionist for the CCSAO.  (*Id.* at 2.)  Soon afterwards, Donovan became the Attorney General of Vermont, and the Governor appointed Sarah George the Chittenden County State's Attorney.[4]  (*Id.*)  Eight days later, George terminated Sall, prompting him to file a charge with the HRC "alleging discrimination based on race, color, religion, national origin, ancestry, and place of birth."  (*Id.*)  In connection with the HRC investigation, the CCSAO claimed Sall's termination resulted from his inability "to perform even the basic duties to which he was assigned," which "compromised the functioning of the office."  (*Id.*)

---

[3]  Sall attached to his Amended Complaint only the "Final Determination" pages of the HRC Report, and a cover letter addressed to Sall briefly summarizing the Report's findings.  (Doc. 7-1 at 1–3.)  Seven Days has attached to its Motion to Dismiss the full 54-page Report, in addition to the Final Determination.  (Doc. 39-1 at 2–57.)  The Court considers the complete HRC Report incorporated by reference in the Amended Complaint, given Sall's substantial reliance on it in the Amended Complaint and his attachment of the Final Determination of the Report to the Amended Complaint.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." (citations and internal quotation marks omitted)).

[4]  The Court may take judicial notice that TJ Donovan was elected Attorney General of Vermont on November 8, 2016, https://ago.vermont.gov/about-the-attorney-generals-office/about-the-attorney-general/, and that Governor Phil Scott appointed Sarah George Chittenden County State's Attorney on January 19, 2017. https://governor.vermont.gov/press-release/governor-phil-scott-appoints-sarah-george-chittenden-county-states-attorney.  *See* Fed. R. Evid. 201(b) (authorizing courts to judicially notice a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

In Sall's "Self-[I]ntro" document, which this Report and Recommendation refers to as the Amended Complaint,[5] Sall states that he ran for Burlington City Council in the March 3, 2017 election. (Doc. 7-2 at 3.) Sall claims that over the course of the campaign and election, Seven Days made two statements and published one article defaming his character. (*Id.* at 11, 14, 15.) First, Sall alleges that at some point prior to and around the time of the election, a Seven Days reporter asked him the following question regarding his candidacy for City Council: "[I]f you cannot keep a job[,] how can the public trust you with a job?" (*Id.* at 11.) Second, Sall claims that on February 28, 2017, Seven Days "wrote/published an article that disparaged and defamed [his] character," "sen[ding] out a message to the community of a general consent from the State Attorney's Office that it was acceptable to scorn, ridicule[], bull[y], intimidate, vilify, harass[], abuse[], insult[], and shun [him]." (*Id.* at 14.) According to Sall, the Seven Days article "stir[red] up hatred" and "abusively and maliciously damaged [his] character" to the few people who did not believe he was a "sexist," a "misogynist," a "terrorist," and a "pedophile" because he was "a Muslim male." (*Id.* at 16–17.) Although the Amended Complaint neither attaches the article nor describes its contents in any detail, Sall extensively quotes from it in his Opposition to Seven Days' Motion to Dismiss/Motion to Strike, stating that "[t]he article was written and published . . . on Tuesday, February 28, 2017, at 7:30 AM."[6] (Doc. 79 at 2; *see also id.* at 6–7, 8, 10, 13–15, 17, 19, 20, 21, 22,

---

[5] The Court refers to Sall's "Self-[I]ntro" document as the Amended Complaint because it is attached to the Amended Complaint and it contains Sall's factual allegations in this action. (*See* Doc. 7 at 4, ¶ III(C); *id.* at 5, ¶ IV; Doc. 7-2.) *See DiFolco*, 622 F.3d at 111; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit . . . ." (internal quotation marks omitted)).

[6] The Court considers the February 28, 2017 Seven Days article—which Seven Days attaches to its Reply in support of its Motion to Dismiss (Doc. 83-1)—incorporated by reference in the Amended Complaint, given Sall's identification of the relevant article and his substantial reliance on it in the Amended Complaint and in his Opposition papers. (*See* Doc. 7-2 at 12, 14, 16–17, 49; Doc. 79 at 2, 6–7, 8, 10, 13–15, 17, 19, 20, 21, 22, 26.) *See DiFolco*, 622 F.3d at 111; *Chambers*, 282 F.3d at 152 ("[T]he complaint is deemed to include . . . any statements or documents incorporated in it by reference." (internal quotation marks omitted)); *see also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) ("We note approvingly . . . that various other circuits have specifically allowed that [d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." (alteration in original) (internal quotation marks omitted)).

26.)  According to Sall, the third allegedly defamatory communication occurred sometime after the Seven Days article was published and "in the midst of President Trump's [Muslim] travel ban." (Doc. 7-2 at 15.)  Sall alleges that when he encountered Seven Days "founder" Paula Routly on a street in Burlington, Routly "turned to her friend and said[, ']I can[]not believe they let him back into the Country.[']"  (*Id.*)

Seven Days filed a Motion to Dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) (Doc. 39) and a Special Motion to Strike the Amended Complaint (Doc. 40). Sall responded to both Motions (Doc. 79),[7] and Seven Days filed briefs in reply (Docs. 83, 84).

## Analysis

## I.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint "provide the grounds upon which [its] claim rests," *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), and allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[7] Sall raises new factual allegations in his Opposition to Seven Days' Motion to Dismiss.  (*See e.g.*, Doc. 79 at 22 ("The clerks knew I filed with them properly, so the idea I sat on warrants and did not know how to file was all false . . . .").)  Ordinarily, a plaintiff may not amend his complaint merely by asserting new facts or theories for the first time in opposition to a pending motion to dismiss.  *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013); *see Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (noting that a plaintiff cannot "amend" its pleading through its opposition papers); *In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 541 (S.D.N.Y. 2021) (holding that "a plaintiff may not raise new facts in opposing dismissal and ask the Court to rely on those facts in determining whether he or she has stated a claim").  Because Sall is proceeding *pro se*, however, the Court may consider new factual allegations raised in his Opposition—to the extent they are consistent with the Amended Complaint—and treat them as amending the Amended Complaint.  *See Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) ("A *pro se* plaintiff may not raise entirely new causes of action for the first time in his opposition papers, but the Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint." (internal quotation marks omitted)); *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").  Therefore, in recommending a disposition on Seven Days' Motion to Dismiss, the Court accepts as true the new factual allegations contained in Sall's Opposition to the extent those allegations are consistent with the allegations pleaded in the Amended Complaint.  The Court also draws all reasonable inferences in Sall's favor, as required in considering a motion to dismiss under Rule 12(b)(6).  *See Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 289 n.3 (S.D.N.Y. 2020).

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff need not provide "detailed factual allegations" to support the claims alleged in the complaint, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In assessing the adequacy of the pleadings, the court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). When considering the complaint of a *pro se* plaintiff, the court must construe the complaint "liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), reading it "to raise the strongest arguments . . . suggest[ed]," *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks omitted). Even *pro se* litigants, however, "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*." *Brickhouse v. City of New York*, No. 09 CIV. 9353(NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010); *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[P]ro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." (internal quotation marks omitted)). The court is not required to credit the complaint's "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, [which are] supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) ("We are not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." (internal quotation marks omitted)).

In considering a motion to dismiss, the court is limited to reviewing the complaint, any documents attached to the complaint or incorporated by reference, any documents that are integral to the plaintiff's allegations, even if not explicitly incorporated by reference, and facts of which the court may take judicial notice. *See ATSI Commc'ns*, 493 F.3d at 98. Courts recognize that there is "particular value" in resolving defamation claims at the pleading stage "so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 264 (S.D.N.Y. 2013) (internal quotation marks omitted), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *and aff'd*, 622 F. App'x 67 (2d Cir. 2015). "[I]n defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Id.* at 279.

## II. Sall's § 1983 claim against Seven Days should be dismissed.

Sall brings this lawsuit against all Defendants under 42 U.S.C. § 1983, alleging discrimination in violation of federal law and defamation of character. (Doc. 7 at 3–5.) Under § 1983, a plaintiff may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration and omissions in original) (quoting 42 U.S.C. § 1983). Section 1983 does not itself establish federally protected rights; it "provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt*, 504 U.S. at 161. In order to state a claim under § 1983, a plaintiff must: (1) "allege the violation of a right secured by the Constitution and laws of the United States," and

(2) "show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Amended Complaint does not allege that Seven Days was a state actor, or otherwise acted under color of state law, when it made the allegedly defamatory statements. Rather, it makes the wholly conclusory statement that "Seven Days in collaboration with the Chittenden County State[']s Attorney's Office wrote/published an article that disparaged and defamed [Sall's] character." (Doc. 7-2 at 14.) It offers no additional facts from which the Court might reasonably infer collaboration or joint action between a state actor and Seven Days to cause the damage alleged. Such a bare allegation is insufficient to satisfy the state actor requirement for a claim under § 1983. Therefore, I recommend that the Court grant the Motion to Dismiss with respect to Sall's § 1983 claim against Seven Days.

**III.    Sall's defamation claims against Seven Days should be dismissed.**

Sall's claims against Seven Days are principally based on the state law of defamation. Although federal courts generally do not have jurisdiction over state-law claims, in a civil action in which original federal jurisdiction is established, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction over state-law claims if, the court "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). As the Second Circuit explained, "if [the plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims." *Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law

claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Although Sall invokes federal-question jurisdiction in bringing this § 1983 lawsuit, there is an arguable basis for diversity jurisdiction over the alleged defamation claims.[8]  In light of this additional potential basis of subject-matter jurisdiction, and as Sall brings his action *pro se*, this Report and Recommendation addresses the state-law defamation claims against Seven Days, and concludes that they lack merit for the reasons explained below.

A.    **The statute of limitations bars the defamation claims that are based on the February 2017 Seven Days article and the Seven Days' reporter's question preceding publication of the article.**

Seven Days contends that Sall's defamation claims are barred by the applicable statute of limitations.  (Doc. 39 at 2, 14; Doc. 83 at 1, 2.)  Sall has not responded to this argument.

A claim may be dismissed under Rule 12(b)(6) for failure to comply with the applicable statute of limitations "only if [the] complaint clearly shows the claim is out of time."  *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).  Under Vermont law, defamation claims are subject to a three-year limitations period.  *See Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005) (applying 12 V.S.A. § 512(3) to impose a three-year statute of limitations to defamation claims in Vermont); *Assur v. Cent. Vt. Med. Ctr.*, No. 2:06–CV–239, 2012 WL 6951961, at *6 n.8 (D. Vt. Dec. 20, 2012) (noting that, for statute of limitations purposes, § 1983 claims "are best characterized as personal injury actions," and concluding that "Vermont's generally[] applicable three-year statute of limitations for personal injury claims applie[d] to Plaintiff's [section 1983] claims" (internal quotation marks omitted)), *report and recommendation*

---

[8]  Under 28 U.S.C. § 1332(a)(1), district courts have jurisdiction in a civil action "where the matter in controversy exceeds the sum of $75,000" and the action is "between . . . citizens of different States."  In the absence of further definitive information on the citizenship status of both Sall and Seven Days, there is at least a colorable claim of diversity jurisdiction.  The Amended Complaint indicates that Sall currently resides in Missouri and Seven Days' publisher is based in Vermont (Doc. 7 at 2), and the Amended Complaint alleges that the amount in controversy exceeds $75,000 (*id*. at 5).

*adopted*, 2013 WL 322314 (D. Vt. Jan. 28, 2013); *id.* at *6 n.7 ("Plaintiff's defamation claim is

governed by the three-year limitations period set forth in 12 V.S.A. § 512(3)."); *Dulude v. Fletcher*

*Allen Health Care, Inc.*, 174 Vt. 74, 85, 807 A.2d 390, 399 (2002) ("[A] defamation claim must be

brought within three years after the cause of action accrues.").

A defamation claim generally accrues on the date of publication or circulation of the

allegedly defamatory publication. However, accrual may be deferred until the plaintiff discovers, or

should have discovered the nature of the defamatory communication through the exercise of

reasonable care and diligence. *Assur*, 2012 WL 6951961, at *6–8; *Dulude*, 174 at 85; *Lapinsky v.*

*Copley Hosp.*, No. 1:05-cv-34, 2007 WL 3143331, at *5 (D. Vt. Oct. 25, 2007) (finding plaintiff

was on notice of defamation claim when he "knew the substance of the allegedly defamatory

statements, who made those statements[,] and at least one person . . . to whom they were made").

Sall does not contend that his defamation claims accrued later than the dates on which the

challenged article was published, or the verbal statements were made. It can be reasonably inferred

from the allegations in the Amended Complaint that he was aware of their contents and their

allegedly defamatory nature either at the time they were stated or published, or very soon thereafter.

According to the Amended Complaint, the reporter's question to Sall occurred before publication of

the Seven Days article (*see* Doc. 7-2 at 11–12), and the article was published before the March 2017

election (*id.* at 49). In his Opposition, Sall explicitly states that the article was published on

February 28, 2017. (Doc. 79 at 2.) Therefore, in order to comply with the three-year limitations

period, Sall was required to file his claim pertaining to the February 28, 2017 article by February

28, 2020. As the reporter's question occurred before publication of the article, Sall was required to

file his related claim earlier than February 28, 2020. He filed this action on November 12, 2020,

over eight months after the statute of limitations expired. Therefore, Sall's claims based on the

February 2017 article and the reporter's question should be dismissed for failure to comply with the applicable statute of limitations.

The Amended Complaint does not allege precisely when the statement attributed to Paula Routly was made. Sall alleges that it was made "[a]fter the publication of the disparaging and defaming article," which necessarily means that it occurred sometime after February 28, 2017. (Doc. 7-2 at 14.) He further alleges that he went on vacation after publication of the article, and that Routly allegedly made the statement upon his return. (*Id*. at 14–15.) Sall's timeline suggests that Routly's statement was made soon after the March 3, 2017 Burlington City Council election. Therefore, it appears that the filing of Sall's Complaint in November 2020 was well beyond the three-year limitations period. However, unlike the February 28, 2017 article and the reporter's question to Sall preceding publication of the article, the timing of the statement attributed to Routly is not clear from the allegations in the Amended Complaint. As the Amended Complaint does not clearly show that the defamation claim based on this statement is out of time, *Harris*, 186 F.3d at 250, dismissal of this claim on statute of limitations grounds is inappropriate.

Accordingly, I recommend dismissing Sall's defamation claims that are based on the February 28, 2017 Seven Days article and the Seven Days' reporter's question as untimely. However, I do not recommend dismissal of the defamation claim related to Routly's statement on statute-of-limitations grounds.

**B.    Sall's defamation claims are insufficient as a matter of law.**

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (internal quotation marks omitted). Generally, spoken defamatory words are slander, and written defamatory words are libel. *Id.* Under Vermont law, a defamation cause of action requires a plaintiff to allege: "(1) a false and defamatory statement concerning another; (2) some negligence, or greater fault, in

11

publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; (5) special damages; and (6) some actual harm so as to warrant compensatory damages." *Decker v. Vermont Educ. Television, Inc.*, 13 F. Supp. 2d 569, 574 (D. Vt. 1998) (quoting *Crump v. P & C Food Markets, Inc.*, 154 Vt. 284, 291, 576 A.2d 441, 446 (1990); *see also Soojung Jang v. Trustees of St. Johnsbury Academy*, 331 F. Supp. 3d 312, 344 (D. Vt. 2018).

> **1.    The Amended Complaint does not state a defamation claim as to the Seven Days' reporter's question.**

Sall alleges that a Seven Days reporter engaged in actionable defamation when the reporter asked him the following question during his campaign for Burlington City Council: "If you cannot keep a job, how can the public trust you with a job?"  Seven Days contends that this language fails as a matter of law to constitute defamation because (1) the content of the question was not false; and (2) the reporter did not make a statement, but rather, asked a question.  (Doc. 39 at 8.)

Sall acknowledges in the Amended Complaint and his Opposition to Seven Days' Motion to Dismiss that he was fired from his job at the State's Attorney's Office "in the middle of a City Council campaign race."  (Doc. 7-2 at 9; Doc. 79 at 9, 15, 20.)  To the extent that Sall alleges the phrase "if you cannot keep a job" is false, the claim is without merit because he acknowledges in the Amended Complaint that the factual premise of the question is true.

With respect to Seven Days' suggestion that the question could not be actionable in defamation because it was not a statement, it is correct that defamation liability premised on questions asked is not common.  *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1338 (D.C. Cir. 2015) (observing that "posing questions has rarely given rise to successful defamation claims"); *see also Boulger v. Woods*, 306 F. Supp. 3d 985, 999 (S.D. Ohio 2018) ("The vast majority of courts to consider questions as potential defamatory statements have found them not to be assertions of fact. Rather, a question indicates a defendant's lack of definitive knowledge about the issue and invites

the reader to consider various possibilities." (internal quotation marks omitted)).  As the District of
Columbia Circuit has explained:

> whether a question can give rise to a successful defamation claim "is significant.
> Reporters routinely and necessarily ask questions in order to obtain information, and
> the mere asking of a question may cast a shadow on the reputation of a person about
> whom the question is asked.  But a genuine effort to obtain information cannot be
> defamatory.  A contrary rule would render legitimate reporting impossible."

*Abbas*, 783 F.3d at 1339 (quoting 1 Robert D. Sack, *Sack on Defamation* § 2:4.8 (4th ed. 2010)).  In
this case, whether or not a question may give rise to liability for defamation as a legal matter, the
fact remains that the premise of the question posed to Sall—that he had been recently terminated
from his job—was not substantively false.  The question therefore cannot support a defamation
claim, no matter how embarrassing it may have been to Sall.  *See id.* at 1338 ("[I]t is generally
settled as a matter of defamation law . . . that a question, however embarrassing or unpleasant to its
subject, is not accusation." (internal quotation marks omitted)).

Therefore, I recommend that the Court grant Seven Days' Motion to Dismiss Sall's
defamation claim based on the question posed to him by a Seven Days reporter during Sall's
campaign for Burlington City Council.

## 2. The Amended Complaint fails to state a defamation claim as to Paula Routly's alleged statement.

Sall alleges that Paula Routly of Seven Days made a defamatory verbal remark about him to
her friend as they encountered Sall on a Burlington street.  According to Sall, Routly stated: "I
can[]not believe they let him back into the Country."  (Doc. 7-2 at 15.)  Sall further alleges that
Routly's comment occurred "in the midst of President Trump's [Muslim] travel ban."  (*Id.*)  Seven
Days contends that Routly's alleged statement is not defamatory because (1) the statement was
constitutionally protected opinion; and (2) under the "innocent construction" rule, the court must
adopt a non-defamatory interpretation of the challenged statement.  (Doc. 39 at 8–10.)

Although "false statements of fact" are generally not constitutionally protected, *Soojung Jang*, 331 F. Supp. 3d at 345 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974)), "the constitution does protect allegedly defamatory statements of pure opinion," *id.* (citing *Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 720 (D. Vt. 2012), *aff'd*, 570 F. App'x 66 (2d Cir. 2014)); *see Gertz*, 418 U.S. at 339–40 ("Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."); *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977) ("An assertion that cannot be proved false cannot be held libellous. A writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be.").

"Whether a statement is opinion or fact is a question of law for the court." *Knelman*, 898 F. Supp. 2d at 720. The following factors inform the court's determination whether a statement is protected opinion or a statement of fact:

> (1) An assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which "might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact."

*Id*. at 721 (quoting *Kirch v. Liberty Media Corp*., 449 F.3d 388, 403 (2d Cir. 2006)). These factors compel the conclusion that Routly's alleged statement was protected opinion and therefore not susceptible to a claim for defamation. The challenged statement clearly does not have a precise meaning that is readily understood. To the contrary, it is unclear whether the statement is meant to be critical of Sall or the governmental actors responsible for determining admission of travelers to the United States. Sall alleges that the statement occurred contemporaneously with then-President Trump's "travel ban" pertaining to individuals from certain geographical locales. (Doc. 7-2, at 15.)

14

Considering the "broader social context" in which the statement allegedly occurred, *Knelman*, 898 F. Supp. 2d at 721, the comment may plausibly be interpreted as a criticism of governmental actors charged with implementation of the "travel ban."[9]  Finally, the alleged comment began with the words "I cannot believe," strongly suggesting that the words were expressing an opinion rather than facts that could be objectively characterized as true or false.

Therefore, I recommend that the Court grant Seven Days' Motion to Dismiss Sall's defamation claim based on the statement attributed to Paula Routly.

### 3.    The Amended Complaint does not state a defamation claim based on the February 2017 Seven Days article.

Sall contends Seven Days is liable for defamation because the article it published on February 28, 2017 "disparaged and defamed his character."  (Doc. 7-2 at 14.)  As explained below, the Amended Complaint has not adequately pleaded "actual malice" to state a defamation claim.

Under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), a public official may not succeed on a defamation claim unless he or she demonstrates that the defendant published the defamatory statement with "actual malice."  *Id*. at 285–86.  The "actual malice" standard also applies to defamation claims brought by "public figures."  *Gertz*, 418 U.S. at 335–36.  In *Gertz*, the Supreme Court explained:

> In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.  More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.  In either case such persons assume special prominence in the resolution of public questions.

*Id*. at 351.  "The effect of *Gertz* was to significantly broaden the scope of subjects about whom commentary will receive the heightened protections provided in *Sullivan*."  *Biro*, 963 F. Supp. 2d

---

[9]  Seven Days contends that this plausible alternative interpretation of the alleged comment would not be defamatory as to Sall, and therefore the statement should not give rise to liability for defamation under the "innocent construction" rule.  (Doc. 39 at 9 (citing *Croce v. New York Times Co.*, 930 F.3d 787, 796 (6th Cir. 2019).)  The Court is not aware of authority applying this rule of construction in defamation cases under Vermont law.

at 270.  It is well settled that a candidate for public office may not recover damages for an allegedly defamatory statement unless he shows that the challenged statement was made with actual malice. *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 299 (1971).  Indeed, "[p]ublic discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the New York Times rule."  *Id.* at 300–01.

Sall alleges that he was running for Burlington City Council at the time that Seven Days published the article on February 28, 2017.  (*See* Doc. 7-2 at 3.)  As a public figure, therefore, he may not succeed on a defamation claim unless he demonstrates that the statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not."  *New York Times Co.*, 376 U.S. at 280.  Actual malice may not be presumed or inferred from the nature of the defamatory statement, nor may it be found merely by showing a failure to investigate adequately before publication, a failure to verify the facts, or a misrepresentation of the facts because of a misconception.  *Burns v. Times Argus Ass'n, Inc.*, 139 Vt. 381, 389, 430 A.2d 773, 777 (1981). "Importantly, actual malice does not simply connote ill will or spite; rather it is a term of art denoting deliberate or reckless falsification."  *Biro*, 963 F. Supp. 2d at 276 (internal quotation marks omitted).  To establish actual malice, a plaintiff must allege plausible facts showing that the defendant "in fact entertained serious doubts as to the truth of his publication."  *Id*.  Actual malice is:

> a difficult standard to meet, and quite purposefully so: as the Supreme Court has repeatedly noted, the stake of the people in public business and the conduct of public officials is so great that neither the defense of truth nor the standard of ordinary care would protect against self-censorship and thus adequately implement First Amendment policies."

*Id*. at 277 (internal quotation marks omitted).

The Amended Complaint does not attribute any level of intent to Seven Days in connection with its publication of the article. (*See* Doc. 7-2 at 14–17.)[10] It is clear from the face of the article that the Seven Days reporters sought to obtain both sides of the story by including several quotes from Sall himself and Sall's attorney, John Franco. (*See* Doc. 83-1, Ex. 1.) For example, the article quotes Sall's statement that the CCSAO "prais[ed]" him when he was employed in the office. The article also includes a question Sall posed to the reporter during a pre-publication phone interview: "Why, if I wasn't doing a great job, did they only ever tell me 'You're doing a fantastic job?'" (*Id.* at 3.) The article includes comments by Attorney Franco in support of Sall: "[Sall] was subject to different treatment than other people in the office who did not share [Sall's] qualities [of being a black Muslim immigrant from Liberia]" (*id.* at 1), and "[Sarah George] was on the job for five working days and she fired the black guy for the job performance that the former boss considered to be adequate!" (*id.* at 4).

Such even-handed reporting, including publication of the plaintiff's denials of accusations, "makes it . . . less plausible that [the reporter] w[as] behaving with actual malice." *Biro*, 963 F. Supp. 2d at 283 (no actual malice where article was "indisputably impartial"); *Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 120 (2d Cir. 1977) (actual malice not established where article included the "outraged reactions" of subjects of the allegedly defamatory article); *Tavoulareas v. Piro*, 817 F.2d 762, 794, n.44 (D.C. Cir. 1987) (including subject's denials of accusations in report constitutes "an even-handed approach that scarcely bespeaks the presence of actual malice"); *Suchomel v. Suburban Life Newspapers, Inc.*, 84 Ill. App. 2d 239, 246, 228 N.E.2d 172, 176 (Ill.

---

[10] In his Opposition to Seven Days' Motion to Dismiss, Sall states that Seven Days published the article with actual malice. (*See* Doc. 79 at 8 ("Seven Days acted with reckless disregard for the truth"), 20 ("Seven Days knew it was false but yet ran the article . . . with the intent to harm my reputation"), 23 ("[t]hese statements . . . were all false and . . . Seven Days knew it but they did not care").) The assertion of these claims in his Opposition, however, does not remedy the pleading deficiencies of his Amended Complaint regarding the actual malice standard. Further, as explained in this Report and Recommendation, the contents of the article itself reveal an absence of actual malice. Therefore, any amendment of the Amended Complaint to plead actual malice would be futile.

App. Ct. 1967) (finding actual malice was "patently lacking as a matter of law," where article, on its face, was a "typical example of a matter-of-fact news coverage of the official inquiry and public controversy that occurred as a result of the serious charges of official misconduct committed by the plaintiff," and where the article "went to great lengths to set forth both sides of the controversy[,]. . . specifically report[ing] and quot[ing] plaintiff's denials of the charges"), *aff'd*, 40 Ill. 2d 32, 240 N.E.2d 1 (1968). The article contains extensive quoted language from a variety of individuals with knowledge of Sall and his termination from the CCSAO. These individuals, including a former employee of the CCSAO, State's Attorney George, former State's Attorney Donovan, Sall's attorney, and Sall himself, represented a wide range of perspectives on the subject addressed in the article. The article further notes that Sall would be filing a lawsuit challenging his dismissal as discriminatory.

The Seven Days article also includes several positive statements about Sall, including that he "turned out to be a hard worker" (Doc. 83-1 at 2), that he "was well-liked" (*id.* at 3), and that he "had not been written up for poor work performance" (*id.*). The article quotes Sall's former employer, then-State's Attorney Donovan, that he "consider[ed] [Sall] [a] friend[]" and "was happy to have [Sall]" working for him prior to Donovan leaving the office. (*Id.* at 4.) Generally, where a reporter "reached out" to secure an interview or otherwise solicit comment from the plaintiff, and then published the plaintiff's denial of the relevant claim, an inference of actual malice is negated. *See, e.g.*, *Franchini v. Bangor Publ'g Co. Inc.*, Docket no. 1:18-CV-00015-GZS, 2020 WL 1879012, at *3 (D. Me. Apr. 15, 2020) ("The fact that [defendant reporter] sought Plaintiff's comment, which was included in the article, and presented his version of events alongside that of the [U.S. Department of Veterans' Affairs] undermines any inference of actual malice.").

Furthermore, Sall acknowledges that much of the article is verifiably true. The article quotes both Sall and his attorney admitting that Sall did indeed make mistakes while employed with

the CCSAO, though they claim those mistakes occurred only during Sall's training period.  (*See*

Doc. 83-1 at 3; *see also* Doc. 79 at 7, 16.)  Sall also repeatedly states in his Opposition that he was

in fact "terminated" by the CCSAO.  (Doc. 79 at 9, 15, 20.)  Courts have found that the plaintiff's

admission of some of the underlying factual claims contained in an allegedly defamatory

publication make a claim of actual malice less plausible.  *See, e.g.*, *Lemelson*, 903 F.3d at 24.  In

short, Sall has not plausibly alleged that Seven Days published the article with actual malice.

For these reasons, and recognizing that "the First Amendment protects the accurate and

disinterested reporting of [accusations against a public figure]," *Edwards*, 556 F.2d at 120, I

recommend that the Court grant Seven Days' Motion to Dismiss Sall's defamation claim based on

the February 28, 2017 article.[11]

## IV.    Sall's arguments in opposition to Seven Days' Motion to Dismiss lack merit.

Sall appears to argue that the Seven Days article constituted "[f]ighting words" (Doc. 79

at 4), a category of speech that is not entitled to First Amendment protection.  "Fighting words" are

defined as "those personally abusive epithets which, when addressed to the ordinary citizen, are, as

a matter of common knowledge, inherently likely to provoke violent reaction."  *Cohen v.*

*California*, 403 U.S. 15, 20 (1971); *see Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572

(1942) (defining "fighting words" to include words "which by their very utterance inflict injury or

tend to incite an immediate breach of the peace"); *State v. Tracy*, 2015 VT 111, ¶ 28, 200 Vt. 216,

232, 130 A.3d 196, 206 (explaining that the "fighting words" doctrine applies "only when a

defendant's spoken words, when directed to another person in a public place, tend to incite an

---

[11]  In further support of its Motion to Dismiss, Seven Days relies on the Press Clause of the First Amendment, the neutral reporting privilege, and the press protections found in the Vermont Constitution.  (*See* Doc. 39 at 5–7, 12–13, 15–23; Doc. 83 at 3–5, 6.)  Given the above findings, this Report and Recommendation does not explicitly address these additional grounds.  Nevertheless, the actual malice analysis fundamentally recognizes the interest in protecting speech about public figures while respecting individual rights.  *Edwards*, 556 F.2d at 115 ("[T]he federal courts have steadfastly sought to afford broad protection to expression by the media, without unduly sacrificing the individual's right to be free of unjust damage to his reputation.").

immediate breach of the peace" (internal quotation marks omitted)). The verbal statements and article at issue in the Amended Complaint simply do not rise to the level of "fighting words." It is difficult to conceive how the statements in this case constituted "personally abusive epithets" that are "inherently likely to provoke violent reaction." *Cohen*, 403 U.S. at 20.

Sall further argues that Seven Days' Motion to Dismiss should be denied on procedural grounds because the "required notice for [p]ro [s]e litigants w[as] not included." (Doc. 79 at 24.) The referenced notice is required only in the context of a motion for summary judgment or a motion to dismiss that is converted to a motion for summary judgment. *See* L.R. 56(e); Fed. R. Civ. P. 56(e); *McGee v. Pallito*, No. 1:10–cv–11–jgm–jmc, 2013 WL 5372328, at *11 (D. Vt. Sept. 24, 2013). A motion to dismiss under Rule 12(b)(6) does not have an associated special notice requirement.

Finally, Sall argues that Seven Days "disregarded the Federal and Vermont Local Rules of Civil Procedure" by "exceed[ing] the . . . number of pages [allowed for a motion to dismiss]." (Doc. 79 at 24.) This argument provides no basis for relief. Local Rule 7(a)(4)(A) provides that "a memorandum supporting . . . a dispositive motion must not exceed 25 pages, excluding exhibits and attachments." As Seven Days' Motion to Dismiss consists of 24 pages, it is in compliance with the Court's Local Rules.

## V.    Sall should not be granted leave to amend the Amended Complaint.

Read liberally, Sall's opposition brief may be interpreted as a request for leave to amend the Amended Complaint with respect to his allegations against Seven Days.

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). An opportunity to amend is not required, however, where

"[t]he problem with [the complaint] is substantive," such that "better pleading will not cure it" and thus amendment is "futile." *Id.* (a "futile request to replead," even by a *pro se* litigant, "should be denied"); *see Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) ("leave to amend a complaint need not be granted when amendment would be futile"). An amendment is "futile" if the amended pleading would not withstand a motion to dismiss. *See Jones v. Phelps Corp.*, No. 3:14–cv–84 (GLS/DEP), 2014 WL 2195944, at *3 (N.D.N.Y. May 22, 2014).

Sall has already amended his complaint once. He has specifically identified the three allegedly defamatory statements in the Amended Complaint. He has not stated any facts to suggest that an amended pleading would cure the substantive deficiencies the Court has identified in the Amended Complaint. Given the allegations in the Amended Complaint and in the documents attached and incorporated by reference in the Amended Complaint, amendment would be futile with respect to Sall's § 1983 and defamation claims against Seven Days. Therefore, I recommend that the Court deny Sall leave to file a second amended complaint against Seven Days.

## Conclusion

As explained more fully above, I recommend that the Court GRANT Seven Days' Motion to Dismiss (Doc. 39) without leave to amend, because: (1) Sall has not plausibly alleged that, at the time of the alleged defamatory statements, Seven Days was a state actor or otherwise acting under color of state law to sustain a § 1983 claim; (2) Sall has not timely filed defamation claims against Seven Days arising out of its February 28, 2017 article and its reporter's question that preceded publication of the article; (3) the Seven Days' reporter's question and Paula Routly's statement do not constitute false statements actionable in defamation; and (4) the Amended Complaint does not plausibly allege facts showing that Seven Days published the February 28, 2017 article with actual malice, a necessary element of a defamation claim. Given the recommendation to grant the Motion

to Dismiss without leave to amend, I recommend that the Court DENY Seven Days' Special Motion to Strike (Doc. 40) as moot.

Dated at Burlington, in the District of Vermont, this 11th day of January 2022.

_/s/ Kevin J. Doyle_____
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).