UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Abdullah Saajoh Sall,

    Plaintiff,

        v.

Sarah Fair George et al.,

    Defendants.

Civil Action No. 2:20–cv–214-cr

## REPORT AND RECOMMENDATION
### (Docs. 43, 46, 47, 60, 65, 67, 76)

Plaintiff Abdullah Saajoh Sall, proceeding *pro se*, brings this action under 42 U.S.C.

§ 1983 against Defendants Sarah George, the Chittenden County State's Attorney's Office

(CCSAO), Seven Days Newspaper, the Vermont State Police, "Chittenden County Police

Departments," the City of Burlington, Chittenden County, Local Motion, the Greater Burlington

YMCA, and others.[1]  (Doc. 7 at 1–3, 5.)  Sall alleges that starting in 2012, he experienced

discrimination in Chittenden County, Vermont based on his race, religion, and national origin,

causing him chronic trauma, depression, and anxiety.  (*Id.* at 3–5.)  Sall claims that "[t]he City of

Burlington and Chittenden [County] as a whole . . . is a racist safe h[]aven city with a culture and

tradition of subtle racism as the underbelly of the community" (Doc. 7-2 at 37), and that "[t]he

residents of Burlington, Chittenden County, and Vermont convey their racial disdain in so many

---

[1]  In the caption of the Amended Complaint, Sall identifies only five Defendants: "Chittenden County Townships, Chittenden County State Attorney's Office, Local Motion, Chittenden Police Departments, [and] Seven Day[s]."  (Doc. 7 at 1.)  On pages two and three of the Amended Complaint, Sall names several other Defendants, including Chittenden County State's Attorney Sarah George and the Vermont State Police, among others.  (*Id.* at 2–3.)  In his prayer for relief, Sall references additional Defendants, including the Greater Burlington YMCA.  (*Id.* at 5.)  Sall attaches to the form Amended Complaint a 59-page document entitled "Amended Complaint, Abdullah Sall Self-[I]ntro," in which he lists some 35 Defendants, including the Defendants identified above, 16 "Chittenden County townships," and 10 "Chittenden County Police Departments."  (Doc. 7-2 at 7.)

different ways" (*id.* at 38).  As a black Muslim man who immigrated to America from Africa (*id.* at 3), Sall alleges that he has been "made to pay the price" in a culture that "sees black m[e]n as offenders, aggressive, or violent criminals" (*id.* at 38).  Sall seeks $300 million dollars in restitution, to "help [account for] all the injustices [he] was made to endure."  (Doc. 7 at 5.)

In this Report and Recommendation, the Court considers the following motions: State Defendants' Motion to Dismiss (Doc. 43), Defendant South Burlington Police Department's Motion to Dismiss (Doc. 46), Municipal Defendants' Joint Motion to Dismiss (Doc. 47) which is joined by Defendant Town of St. George and incorporated by reference in a separate Motion to Dismiss (Doc. 76), Defendant City of Burlington's Motion to Dismiss (Doc. 60), Defendant City of South Burlington's Motion to Dismiss (Doc. 65), and Defendant Burlington Police Department's Motion to Dismiss (Doc. 67).[2]  State Defendants' Motion to Dismiss (Doc. 43) is unopposed.[3]  Sall has filed an Opposition to each remaining Motion (*see* Docs. 88–92, 94), and the appropriate defending party has filed a Reply (*see* Docs. 95, 98–99, 100–101).

---

[2]  These listed Defendants are referred to as the "Moving Defendants."

[3]  On December 7, 2021, Sall filed a "Response to State Defendants' Motion to Extend Time to File Stipulated Discovery Schedule," in which he states that he "was not served with the State['s] Motion that was filed on . . . March 1, 2021" (Doc. 43) and therefore has had "no opportunity to respon[d] to the Defendant State of Vermont and Vermont State Police's Motions." (Doc. 143 at 1 (internal quotation marks omitted).)  On January 10, 2022, State Defendants filed a Reply to Sall's Response.  (Doc. 148.)  The Reply cites a March 1, 2021 Certificate of Service documenting that counsel for State Defendants mailed the Motion to Dismiss to Sall on that date.  (*Id.* at 2.)  The court docket confirms that the referenced Certificate of Service was filed on March 1, 2021.  (Doc. 43 at 8.)  The Certificate of Service appears to slightly misspell the name of Sall's street as "6910 Salzvurger Avenue" instead of "6910 Salzburger Avenue."  (*Id.*)  The court docket lists Sall's address as "6910 Salzburger Avenue."  In the Complaint and Amended Complaint, however, Sall listed his address as "6910 Salzvurger Avenue" in St. Louis, Missouri.  (Doc. 1 at 2, Doc. 7 at 2; *see* Doc. 5 at 1.)  There does not appear to be a "Salzvurger Avenue" in St. Louis, Missouri, but there is a "Salzburger Avenue," indicating that Sall's correct address is "6910 Salzburger Avenue."  *See* Apartments.com, **https://www.apartments.com/6910-salzburger-ave-saint-louis-mo/gp36qzw/** (last visited Jan. 11, 2022); Mapquest.com, **https://www.mapquest.com/search/result?query=6910%20Salzburger%20&boundingBox=48.922499263758255,-115.97167968750001,25.20494115356912,-53.12988281249999&page=0&index=0** (last visited Jan. 11, 2022).  Despite the minor typographical error in defense counsel's mailing to Sall, it is likely that the Motion to Dismiss was delivered to him.  According to the U.S. Postal Service, mailings with incorrect address information may nevertheless be delivered to their intended recipients, and in the event delivery is not possible, the Postal Service will attempt to return the mail to the sender.  *See* U.S. Postal Serv. Business Mail 101, **https://pe.usps.com/businessmail101?ViewName=DeliveryAddress** (last visited Jan. 11, 2022) ("Almost 25% of

For the reasons discussed below, I recommend GRANTING each of the Motions to Dismiss (Docs. 43, 46, 47, 60, 65, 67, 76), without leave to amend, and dismissing the Moving Defendants from the case.

### Relevant Facts and Procedure

Sall initially filed this action in the District of Massachusetts on November 12, 2020. (Doc. 1.) Approximately one month later, the case was transferred to this District. (Docs. 3, 5.) On January 19, 2021, Sall filed the Amended Complaint. (Doc. 7.) Sall attaches two documents to his Amended Complaint: (1) a "Final Determination" of the Vermont Human Rights Commission (HRC), dated June 25, 2020, finding that the "Department of State's Attorneys and Sheriffs [and] the Chittenden County State's Attorneys' Office . . . illegally discriminated against . . . Sall . . . on the basis of national origin, race, and skin color, in violation of Vermont's Fair Employment Practices Act" (Doc. 7-1 at 1); and (2) a document titled "Amended Complaint

---

all mailpieces have something wrong with the address -- for instance, a missing apartment number or a wrong ZIP Code. Can some of those mailpieces get delivered, in spite of the incorrect address? Yes. But it costs the Postal Service time and money to do that."); U.S. Postal Serv. FAQs (Dec. 8, 2021), https://faq.usps.com/s/article/How-is-Undeliverable-and-Misdelivered-Mail-Handled ("If we are not able to deliver the mail as addressed, we will use the return address on the mailpiece and try to return it to the sender.). It does not appear that State Defendants' Motion to Dismiss was returned to defense counsel. (Doc. 148.) Moreover, courts apply a presumption of receipt when there is evidence of proper mailing. *See Kurz v. Chase Manhattan Bank USA, N.A.*, 319 F. Supp. 2d 457, 463 (S.D.N.Y. 2004). Even in cases where, as here, the party serving papers used a "slightly incorrect" address, courts have found that the presumption applies, albeit in "weakened" form. *See In re STN Enterprises, Inc.*, 94 B.R. 329, 334 (Bankr. D. Vt. 1988) (applying presumption of receipt where one digit of the zip code was incorrect in the mailing address). In *STN Enterprises*, the court found that a bankruptcy creditor claiming non-receipt of a notice form had not rebutted the presumption of receipt where "the address was only 'slightly incorrect,' the notice was never returned to [the] debtor's attorney as undelivered, and . . . [the creditor] had received other mailings from [the] debtor's attorney at the incorrect address." *Id.* at 335. The court further found that "[a] creditor's denial of receipt alone does not rebut the presumption, but merely creates a question of fact." *Id.* at 334. In general, to rebut the presumption of receipt of a mailing, a party claiming non-receipt must do more than merely assert that he did not receive it. *See, e.g.*, *In re Ms. Interpret*, 222 B.R. 409, 413 (Bankr. S.D.N.Y. 1998). In this case, however, Sall merely states in an unsworn filing that he "was not served with" State Defendants' Motion to Dismiss. (Doc. 143 at 1.) Not only is that statement insufficient to rebut the presumption of receipt, it is now well over one month since Sall made that statement, which gave him ample time to contact the Clerk of Court or State Defendants' counsel to request a copy of the Motion. The Court has no information indicating that he has done so. The Court concludes that Sall has opted not to respond to State Defendants' Motion to Dismiss and therefore considers it unopposed. Nevertheless, the Court reads Sall's *pro se* Amended Complaint liberally, considering all potential claims Sall may be alleging against State Defendants. The Court advises State Defendants to ensure that any future mailings in this matter are sent to Sall at "6910 Salzburger Avenue."

3

Abdullah Sall Self-[I]ntro," which serves as the primary factual basis for Sall's allegations in this case (Doc. 7-2).

Sall's "Self-[I]ntro" document, which is attached to the Amended Complaint,[4] is 59 pages in length and written mostly in narrative form.  (*See id.*)  In the Amended Complaint, Sall describes his experiences living in the Burlington, Vermont community, including among other things, his volunteer work at the Boys and Girls Club in Winooski, service as a soccer coach for the Winooski YMCA, work with the Chittenden Emergency Food Shelf; his service as a Chittenden County Court Diversion review board member; his candidacy for Burlington City Council; his work with T.J. Donovan and Sarah George at the Chittenden County State's Attorney's Office; his work at the YMCA and Local Motion; and his eventual move from Vermont to Texas.  (*See id.*)  Throughout these experiences, Sall states that he was subjected to discrimination based on his race, religion, and ethnicity.  He explains:

> [I]f I was to go to Shelburne [F]arm, Winooski music festival, Essex annual fall festivals, Richmond fireworks, or . . . Bolton Valley['s] swim[ming] holes[,] I would . . . be taunted or abused.  It is like a racial, religious, and cultural blood feud but the only thing I am one and alone, and they are numerous.
>
> . . .  [The] [w]hite population of Burlington, Chittenden County, and Vermont [give] snide looks, stone cold faces, [and] mean appearances . . . .
>
> . . .  Racism has been the method employed intentional to keep us out.  Burlington and Chittenden County are not black men[-], Muslim men[-], and African immigrant men[-] friendly city.
>
> . . .
>
> . . .  The silenced stare, dirty looks, curled up lips, spiteful looks, snide looks, and pointing fingers that w[ere] directed at me at the City Market Co-Op[], University of Vermont, Radio Bean, street crossing, city's corners, and front yard

---

[4]  The Court refers to Sall's "Self-[I]ntro" document as the Amended Complaint because it is attached to the Amended Complaint and it contains Sall's factual allegations in this action.  (*See* Doc. 7 at 4, ¶ III(C); *id.* at 5, ¶ IV; Doc. 7-2.)  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit . . . ." (internal quotation marks omitted)).

of my apartment by the residents of the city and county was sickening to say the least and it is short of the values of a friendly and tolerant society.

(*Id.* at 40, 41, 53.)  Sall seeks monetary damages under 42 U.S.C. § 1983 because of Defendants' alleged discriminatory treatment of him.  (Doc. 7 at 3–5.)

For purposes of ruling on the Moving Defendants' Motions to Dismiss, the Court accepts as true the factual allegations contained in Sall's Amended Complaint, as stated above, and as organized by each Moving Defendant or class of Moving Defendants, as briefly summarized below.  (Docs. 7, 7-2).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## I.    Defendants State of Vermont and Vermont State Police

Sall generally alleges that the State of Vermont and the Vermont State Police (VSP) have "not done anything in the fight against racism" (Doc. 7-2 at 27), and the VSP appears to have "a special mission only to watch [black people]" (*id.* at 19).  Sall claims that when an officer of the VSP encounters a black motorist, the officer "turn[s] around and lock[s] eyes with them, . . . immediately follow[ing] [them]" and "find[ing] any reason to pull [them] over."  (*Id.*)  The only specific allegations against the State Defendants appear to be based on two interactions that occurred "[o]ver a year ago."  (*Id.* at 23.)  First, a "Williston Bar[r]acks State Trooper" stopped Sall while he was driving his vehicle and asked him "how [he] got [his] car" and was "very, very, very aggressive and threatening."  (*Id.*)  Second, Sall wrote to "the Vermont State Police Chief" about the incident, and the complaint "was not given any credence."  (*Id.*)

## II.    Defendant Burlington Police Department

Although Sall does not allege any specific act, omission, or policy of the Burlington Police Department (BPD), he describes several vague interactions that he apparently had in Burlington with unnamed police officers.  For example, the Amended Complaint states that

during Ramadan in 2019, Sall was driving on Main Street in Burlington, and a "cop" "was speeding from behind [him] and . . . nearly hit [him]." (*Id.* at 22.) As the officer approached Sall, he "honked angrily." (*Id.*) Sall wrote to the HRC about this incident, as it made him feel "less than human" and "less American" because of his race, religion, and national origin. (*Id.*) Sall also alleges that, on a different occasion, a Burlington police officer "quickly rushed toward" Sall and asked him how he got his car and if he could take a look inside it. (*Id.* at 23.) Finally, Sall alleges that when he "was in Burlington driving in [sic] Winooski," he "got pulled over." (*Id.* at 24.) The Amended Complaint alleges that, "[i]n Vermont, if you are black and drive a new car[,] the instantaneous assumption [is that] it must be stolen or robbed." (*Id.*)

### III.    Defendant South Burlington Police Department

Although Sall generally claims that police officers throughout Vermont discriminate against black individuals (*see, e.g.*, *id.* at 19), the Amended Complaint contains no allegations of specific action or inaction by the South Burlington Police Department (SBPD). The only particular reference to the SBPD appears to be its inclusion in two lists of police departments in Chittenden County. (*Id.* at 7, 37.)

### IV.    Municipal Defendants

Sall does not allege any specific facts pertaining to the Towns of Bolton, Charlotte, Colchester, Essex, Hinesburg, Huntington, Jericho, Milton, Richmond, Shelburne, Underhill, Westford, Williston, St. George, and the City of Winooski. The only allegations that could be construed to relate to these Defendants are the claims that: (1) "[a] couple of years ago," when Sall was walking from the Price Chopper grocery store, "there was a cop" who stopped and looked "sternly" at Sall, asked him where he was coming from and where he was going, asked him for "ID," radioed the ID information to an operator, and returned the ID to Sall (*id.* at

19–20); (2) a "similar incident" occurred at the O'Brien Community Center's parking lot in Winooski (*id.* at 20); and (3) "[o]ver a year ago," a "Williston [o]fficer" pulled Sall over while he was driving on Williston Road and issued him a ticket related to colored lights on his vehicle (*id.* at 23).

## V.    Defendant City of Burlington

Sall claims that the City of Burlington is "permeated with a culture of race generalization, religious generalization, and ethnic generalization." (*Id.* at 37–38.) He alleges that "the people who live in Burlington" are "fanatics of communists, socialists, progressives, lesbians, gays, atheists, anarchists, fiscal conservatives, radical and misandrist feminists, and a minority of classical and modern liberals," who "convey their racial disdain in so many different ways." (*Id.* at 38; *see id.* at 42 ("Together as a group, they have collectively made the City of Burlington and Chittenden [County] into a hate-mongering city that spread[s] false ethnic stereotype[s], religious stereotypes, racial stereotype[s], and promote Muslimisia, Xenomisia, and Afromisia.").) Sall asserts that racism is "the method employed by many Burlington . . . racists," including "the street cobbler, farmer, janitor, biker, hiker, lecturer, kayaker, artist, nurse, teacher, classmate, doctor, bartender, doorman, receptionist, coach, yogi, Burlington City Councilors, cops, lawyers[,] and so on." (*Id.* at 53.) In the section of his Amended Complaint titled "City of Burlington and Chittenden County," Sall lists many names of individuals who appear to reside in various towns in Chittenden County, including Burlington, and claims they all "have a web of connections or racial tentacles that they employed to take part in their religious, racial, and cultural identity hostilities directed towards [him]." (*Id.* at 43.) However, there are no specific factual claims against the City of Burlington.

## VI.    Defendant City of South Burlington

Sall's claims against the City of South Burlington are similar to his claims against the City of Burlington.  The Amended Complaint contains no allegations of any specific act, omission, or policy by South Burlington, but simply includes South Burlington in several lists of locations in Chittenden County.  (*See id.* at 7, 19, 35, 43.)  Like his allegations against the City of Burlington, Sall's allegations against South Burlington are directed at individual residents of Chittenden County or the residents of Chittenden County generally.  (*See, e.g.*, *id.* at 38 ("The habit of passing jud[]gment on people like me in Chittenden County . . . leave[s] no room for exception in the local or state's culture.").)

### <u>Analysis</u>

## I.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint "provide the grounds upon which [its] claim rests," *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), and allege "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A plaintiff need not provide "detailed factual allegations" to support the claims alleged in the complaint, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In assessing the adequacy of the pleadings, the court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff.  *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011).  When considering the complaint of a *pro se* plaintiff, the court must construe the complaint "liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), reading it "to raise the strongest arguments . . . suggest[ed]," *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks omitted).  Even *pro se* litigants, however, "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*."  *Brickhouse v. City of New York*, No. 09 CIV. 9353(NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010); *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[*P*]*ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." (internal quotation marks omitted)).  The court need not credit the complaint's "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, [which are] supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678; *see Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) ("We are not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." (internal quotation marks omitted)).

In considering a motion to dismiss, the court is limited to reviewing the complaint, any documents attached to the complaint or incorporated into it by reference, any documents that are integral to the plaintiff's allegations, even if not explicitly incorporated by reference, and facts of which the court may take judicial notice.  *See ATSI Commc'ns*, 493 F.3d at 98.

## II.    42 U.S.C. § 1983

Sall's brings his Amended Complaint under 42 U.S.C. § 1983.  (*See* Doc. 7 at 3.)  A claimant may bring a suit for damages under § 1983 "against '[e]very person who, under color of

any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations and omissions in original) (quoting 42 U.S.C. § 1983). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)). "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Miller v. Vt. Assocs. for Training & Dev.*, Case No. 2:20-cv-178, 2021 WL 535816, at *2 (D. Vt. Feb. 12, 2021) (explaining that to state a claim under § 1983, the plaintiff must allege "that some person has deprived him of a federal right," and "that the person who has deprived [the plaintiff] of that right acted under color of state . . . law") (alterations in original) (internal quotation marks omitted) (quoting *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005)).

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thompson v. Pallito*, 949 F. Supp. 2d 558, 569 (D. Vt. 2013) (quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).

### III. Equal Protection Claims

Based on the facts alleged in Sall's "Self-[I]ntro" (*see generally* Doc. 7-2) and his request for relief due to "racial discrimination, religious discrimination . . . , [and] discrimination based on national origin" (Doc. 7 at 5), the Court construes the Amended Complaint to allege a violation of Sall's rights under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction

the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Essential to that protection is the guarantee that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Second Circuit has held that the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (emphasis and internal quotation marks omitted). Accordingly, "[t]o prove an equal protection violation, claimants must prove purposeful discrimination directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citation omitted); *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000) (holding that, in order to state a race-based equal protection violation, "a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race").

"[G]eneralized allegations do not make out an equal protection claim." *Sound Aircraft Servs., Inc. v. Town of E. Hampton*, 192 F.3d 329, 335 (2d Cir. 1999). "Well-pled facts showing that the plaintiff has been treated differently from others similarly situated" is "an essential component of such a claim[,] [and] [c]onclusory allegations of selective treatment are insufficient." *Abdur-Raheem v. Wenderlich*, No. 07-CV-6247, 2012 WL 5185605, at *1 (W.D.N.Y. Sept. 19, 2012) (internal quotation marks omitted), *report and recommendation adopted*, No. 07-CV-6247L, 2012 WL 5185191 (W.D.N.Y. Oct. 18, 2012); *see Miller*, 2021 WL 535816, at *2 ("To prove a violation of the Equal Protection Clause, . . . a plaintiff must demonstrate that [s]he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.") (alteration and omission in original) (quoting *Phillips*

*v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)). The plaintiff also must show that this disparity in

treatment "cannot survive the appropriate level of scrutiny" applicable to the alleged

discrimination. *Phillips*, 408 F.2d at 129. To that end, a plaintiff pleading intentional

discrimination based on race must allege one of three factual scenarios:

> [a] plaintiff could point to a law or policy that expressly classifies persons on the
> basis of race. Or, a plaintiff could identify a facially neutral law or policy that has
> been applied in an intentionally discriminatory manner. A plaintiff could also
> allege that a facially neutral statute or policy has an adverse effect and that it was
> motivated by discriminatory animus.

*Brown*, 221 F.3d at 337 (citations and internal quotation marks omitted); *see Rivera-Powell v.*

*New York City Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006) ("In order to establish . . . a

constitutional violation [under the Equal Protection Clause], [the plaintiff] would have to show

that the [defendant] intentionally discriminated against her, either by adopting out of racial

animus policies which are facially neutral but have a racially discriminatory effect, or by

applying a facially neutral policy in a racially discriminatory manner.").

The Amended Complaint pleads none of these scenarios, and more generally, does not

allege facts to support a claim that Sall was treated differently than others similarly situated as a

result of intentional or purposeful discrimination. Sall generally asserts that since 2012 (*see* Doc.

7 at 4), he has been a victim of discrimination in Chittenden County, Vermont based on his race,

religion, and national origin. (*See, e.g.*, Doc. 7-2 at 18, 19 ("As long [as] you are black, Vermont

police officers from local, county, or state do not care if they know you or not. . . . The moment

they see a black person driving . . . , they will immediately follow you."); *id.* at 25 ("I simply

want Vermont as a community to change the way they see Africans, Muslim[] men, and

immigrant[s]."); *id.* at 37 ("The City of Burlington and Chittenden [County] as a whole . . . is a

racist safe h[]aven city with a culture and tradition of subtle racism as the underbelly of the

community.").)  However, Sall offers no specific factual allegations to support his claims that the Moving Defendants' interactions with him were the result of discrimination based on race, religion, or national origin.

Conclusory claims of racial discrimination are insufficient to survive a motion to dismiss. *See, e.g.*, *Thomas v. City of New York*, 143 F.3d 31, 37 (2d Cir. 1998) (affirming dismissal of Equal Protection Clause claim when "plaintiffs did not allege sufficient facts to support discriminatory intent on the part of the [defendant]"); *Yusuf v. Vassar Coll.*, 827 F. Supp. 952, 955–56 (S.D.N.Y. 1993) ("The naked assertion by plaintiff that race was a motivating factor without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race is too conclusory to survive a motion to dismiss." (internal quotation marks omitted)), *aff'd in part, rev'd in part on other grounds*, 35 F.3d 709 (2d Cir. 1994).  For example, in a recent case in this Court, where the plaintiff alleged that the individual defendants "targeted" him because of "the color of his skin," the Court held that "[i]n the absence of further factual allegations, Plaintiff's bare allegation does not plausibly give rise to a claim of racially motivated discrimination."  *Hollins v. South Burlington Police Dep't*, Case No. 2:18-cv-151, 2020 WL 1033335, at *7 (D. Vt. Mar. 3, 2020).  Similarly, another court in this Circuit found that where "the majority of [a] plaintiff's allegations do little more than cite to her mistreatment and ask the court to conclude that it must have been related to her race or gender, the allegations in the complaint do not plausibly give rise to a claim for discriminatory treatment."  *Garzon v. Jofaz Transp., Inc.*, No. 11-CV-5599 (RRM)(VVP), 2013 WL 783088, at *3 (E.D.N.Y. Mar. 1, 2013) (alterations, citations, and internal quotation marks omitted); *see Drayton v. Toys 'R' Us Inc.*, 645 F. Supp. 2d 149, 161 (S.D.N.Y. 2009) (holding that plaintiff's "conclusory allegations" were insufficient to raise inference of intentional discrimination, and explaining that plaintiff "[could]

not base his claim of racial discrimination on general racism in society" (internal quotation marks omitted)). As one court has explained, "merely alleg[ing]" that the plaintiff is African-American, the defendant engaged in certain actions, and the defendant would not have engaged in those actions if the defendant were another race, "is not sufficient" to defeat a motion to dismiss. *Traylor v. Hammond*, 94 F. Supp. 3d 203, 215 (D. Conn. 2015). Rather, a plaintiff must allege facts showing that the plaintiff's protected characteristic caused the defendant's unlawful conduct:

> "[C]laims of race-based discrimination under the Equal Protection Clause . . . require that intentional discrimination be alleged in a non-conclusory fashion." [I]t is hornbook law that the mere fact that something bad happens to a member of a particular racial group does not, without more, establish that it happened because the person is a member of that racial group. The naked assertion by [a] plaintiff that 'race was a motivating factor' without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race is too conclusory to survive a motion to dismiss.

*Id.* (alterations in original) (emphasis, internal citation, and quotation marks omitted) (quoting *Clyburn v. Shields*, 33 F. App'x 552, 555 (2d Cir. 2002)).

The Amended Complaint does not plead a viable discrimination claim against the Moving Defendants under § 1983 and the Fourteenth Amendment's Equal Protection Clause. General allegations of negative interactions with several unnamed police officers in Vermont and bare assertions that police officers in Vermont, Burlington residents, and locations in Chittenden County are racially discriminatory or otherwise biased against Sall because of his religion or national origin are insufficient to withstand a motion to dismiss. In addition, the Amended Complaint does not allege, as required under § 1983, that the Moving Defendants deprived Sall of a federal right or acted under color of state law to deprive Sall of that right. Therefore, I recommend GRANTING the Motions to Dismiss of Defendants the State of Vermont and the Vermont State Police (Doc. 43), the Municipal Defendants (Docs. 47, 76), the BPD (Doc. 67),

14

the SBPD (Doc. 46), the City of Burlington (Doc. 60), and the City of South Burlington (Doc. 65).

I have also considered the Moving Defendants' alternative arguments in support of the Motions to Dismiss and make additional recommendations in Parts IV-VII below.[5]

## IV.    Incapacity to Be Sued

### A.    State Defendants

The State Defendants argue that Sall's claims against them are barred by the Eleventh Amendment doctrine of sovereign immunity.  (*See* Doc. 43.)  The Eleventh Amendment provides immunity to states and state agencies "from suits brought by private parties in federal court."  *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)).  This immunity also extends to "state officials sued for damages in their official capacity."  *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).  There are three exceptions to the sovereign immunity doctrine: (1) the State has waived its immunity; (2) the State's immunity is abrogated by a valid exercise of Congressional authority; or (3) a state official is sued in an action seeking only prospective injunctive relief.  The third exception does not apply here, as Sall is seeking only monetary relief.  Regarding the first exception, a state can choose to waive its sovereign immunity under the Eleventh Amendment by "mak[ing] a 'clear declaration' that it intends to submit itself to [a federal court's] jurisdiction," *In re Charter Oaks Assocs.*, 361 F.3d at 767 (second alteration in original) (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ.*

---

[5]  This Report and Recommendation does not address the City of South Burlington's insufficient-service-of-process argument (*see* Doc. 65 at 3–4), given the recommendation that the Amended Complaint be dismissed for failure to state a claim under Rule 12(b)(6).  *See United States v. Vazquez*, 145 F.3d 74, 80 (2d Cir. 1998) (assuming but not deciding defendant was properly served "[b]ecause the merits of the case against [him] are easily resolved"); *Taylor v. Westor Cap. Grp.*, 943 F.Supp.2d 397, 400 (S.D.N.Y. 2013) ("[D]ismissal under Rule 12(b)(6) renders unnecessary any further consideration of the parties' dispute over service of process under Rule 12(b)(5).").

*Expense Bd.*, 527 U.S. 666, 676 (1999)), or "by voluntarily invoking federal jurisdiction, as when the state itself brings a federal suit or removes a case from state to federal court," *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).  Under the second exception, "Congress by statute may abrogate state immunity."  *Id.*; *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) ("The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." (citation omitted)).

Neither of these exceptions applies here.  Vermont has not waived its immunity through an express declaration.  *See Thompson*, 949 F. Supp. 2d at 572 ("Vermont has not waived its sovereign immunity under § 1983." (citing 12 V.S.A. § 5601(g) and noting that the "Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not specifically waived")).  Nor has the State invoked federal jurisdiction, as it did not initiate this case or remove it to federal court.  Moreover, Congress has not abrogated Vermont's immunity by statute.  *See Muhammad v. Gold*, No. 1:05–CV–146, 2007 WL 3088133, at *2 (D. Vt. Oct. 23, 2007) ("There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983."); *see also Quern v. Jordan*, 440 U.S. 332, 340–41 (1979).  Furthermore, the State is not a "person" subject to suit for damages under § 1983.  *Will*, 491 U.S. at 64, 71; *see Edelman v. Jordan*, 415 U.S. 651, 676 (1974) (holding that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief and may not include a retroactive award which requires the payment of funds from the state treasury" (citations omitted)).

For these reasons, the Eleventh Amendment bars Sall's claims against the State

Defendants.  I therefore recommend that the Court GRANT the State Defendants' unopposed

Motion to Dismiss (Doc. 43) on this alternative ground.

### B.    Municipal Police Departments

Municipal police departments are not subject to suit under § 1983.  *See Hee v. Everlof*,

812 F. Supp. 1350, 1351–52 (D. Vt. 1993) (holding that, under Vermont law, municipal police

departments are not a legal entity with capacity to be sued, and explaining that "[l]ogic . . .

suggests that where a damage award against a municipal department would be paid out of the

municipality's treasury, the suit is ultimately against the municipality, not the specific

department") (citing *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) ("police departments

are not usually considered legal entities subject to suit" (internal quotation marks omitted)));

*Mares v. Stupik*, No. 2:11-CV-00172, 2012 WL 761340, at *2 (D. Vt. Mar. 8, 2012) ("[C]ourts

have widely held that [municipal police departments] are not municipalities, and are not

'persons' within the meaning of Section 1983." (internal quotation marks omitted)).

Therefore, to the extent that Sall asserts claims under § 1983 against municipal police

departments, I recommend that those claims be dismissed.

## V.    Claims against Municipalities

The Municipal Defendants assert that the Amended Complaint should be dismissed

because it fails to state a claim under *Monell v. Department of Social Services of City of New*

*York*, 436 U.S. 658 (1978).  (*See* Docs. 47, 76.)  In *Monell*, the Supreme Court held that although

a municipality may be held liable under § 1983 if its custom, policy, or usage causes the

deprivation of a plaintiff's rights under federal law, *id.* at 690–91, "a municipality cannot be held

liable under § 1983 on a *respondeat superior* theory," *id.* at 691.  "[I]solated acts of excessive

force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability," *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012), and a municipality may be liable only where the action of the municipality itself can be said to have caused the harm, not "simply because a[] [municipal] employee committed a tort," *Nagle v. Marron*, 663 F.3d 100, 116 (2d Cir. 2011).  "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality[;] [t]he plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."  *Bd. of Cnty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis omitted).  Therefore, a municipality may be held liable when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell*, 436 U.S. at 690; *see Hollins*, 2020 WL 1033335, at *5 ("A municipality may be held liable under § 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." (internal quotation marks omitted)).

To attach such liability to a municipality, a plaintiff must show a "direct causal link" between the official policy and the alleged constitutional deprivation.  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Thus, to hold a municipality liable under § 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted).

18

The Amended Complaint contains no allegations of any deliberate conduct on the part of any of the Defendant Municipalities, or of any policy, regulation, or officially adopted decision of those Municipalities that caused Sall to be deprived of a constitutional right. Therefore, I recommend GRANTING the Municipal Defendants' Joint Motion to Dismiss (Docs. 47, 76) on this alternative ground. *See Hollins*, 2020 WL 1033335, at *6 n.3 ("Although the Second Circuit has admonished that courts should 'not condone racially motivated police behavior' and must 'take seriously an allegation of racial profiling,' *United States v. Davis*, 11 F. App'x 16, 18 (2d Cir. 2001), Plaintiff's general and conclusory allegations are insufficient to establish any plausible claim of municipal liability based on a policy of racial profiling." (citing *Connick v. Thompson*, 563 U.S. 51, 62, (2011))).

## VI.    Statute of Limitations

Defendants BPD, SBPD, the City of Burlington, and the City of South Burlington assert that the Amended Complaint should be dismissed because it was not filed within the applicable limitations period. (*See* Docs. 46, 60, 65, 67.) "[T]he burden of establishing a statute-of-limitations defense rests with the party pleading it." *Beaupre v. O'Connor*, No. 2:14-CV-256, 2015 WL 5530180, at *2 (D. Vt. Sept. 18, 2015) (alteration in original) (quoting *Agency of Nat. Res. v. Towns*, 724 A.2d 1022, 1025 (Vt. 1998)). "Although the statute of limitations is ordinarily an affirmative defense that must be raised in an answer, the issue may be decided at the motion to dismiss stage if it appears on the face of the complaint." *Miller*, 2021 WL 535816, at *3 (citing *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014)). Dismissal of a complaint on statute of limitations grounds is appropriate on a motion to dismiss "only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999); *see Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 427

(S.D.N.Y. 2013) ("[B]ecause the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run."); 5 WRIGHT & MILLER, FED. PRAC. & PROC. § 1226 (3d ed. 2004) ("[T]he current trend in the cases is to allow [timeliness] to be raised by a motion to dismiss under Rule 12(b)(6) when the defect appears on the face of the complaint.").

In § 1983 actions, "the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions.'" *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (alterations in original) (quoting *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)); *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (statute of limitations for § 1983 claims corresponds to the limitations period for personal injury actions under state law). Therefore, § 1983 actions in Vermont are subject to the three-year statute of limitations for personal injury actions. *See* 12 V.S.A. § 512(4); *Miller*, 2021 WL 535816, at *3.

However, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388; *see Spak v. Phillips*, 857 F.3d 458, 462–63 (2d Cir. 2017). Under federal law, accrual occurs "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citations and internal quotation marks omitted). The claim accrues "when the wrongful act or omission results in damages[,] . . . even though the full extent of the injury is not then known or predictable." *Id.* at 391 (internal quotation marks omitted). The Second Circuit explained that accrual occurs "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted); *see Holiday v. Martinez*, Docket No. 02-7848,

2003 WL 21242641, at *2 (2d Cir. May 29, 2003) (three-year statute of limitations applies to § 1983 due process claim, which accrues when plaintiff knows or has reason to know of the injury that is the basis of his action).

Because Sall filed this action on November 12, 2020 (Doc. 1), his claims must have accrued on or after November 12, 2017. In the Amended Complaint's Statement of Claim, Sall alleges that the "events giving rise to [his] claim(s)" occurred from "2012 to [the] present." (Doc. 7 at 4.) This timeframe encompasses potential claims that are both within and outside the applicable limitations period. However, the Amended Complaint is unclear both as to the nature of the allegedly discriminatory conduct and the timing of the conduct. Given that Sall makes general allegations without identifying when the unlawful conduct occurred over the eight-year period between 2012 and 2020, it is not possible to assess when Sall's claims accrued.

Defendants BPD, SBPD, the City of Burlington, and the City of South Burlington have not met their burden of "clearly show[ing] [that] the claim[s] [are] out of time," based solely on the face of the Amended Complaint. *Harris*, 186 F.3d at 250. Therefore, I do not recommend dismissal of the claims against these Defendants based on the statute of limitations.

## VII. Sufficiency of Amended Complaint Under Rules 8 and 10

The Municipal Defendants also contend that the Amended Complaint should be dismissed for failure to satisfy the pleading requirements of the Federal Rules of Civil Procedure. They specifically argue that the Amended Complaint is "severely deficient," leaving Defendants without sufficient notice of the asserted claims (Doc. 47 at 1): "[Sall] fails to articulate what the Municipal Defendants did or failed to do which resulted in a violation of his rights." (*Id.* at 2.)

Federal Rule of Civil Procedure 8(a)(2) requires that the complaint in a civil case contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule

8(d)(1) provides that each allegation in the complaint "must be simple, concise, and direct."

Rule 10(b) requires that a party state its claims in "numbered paragraphs, each limited as far as

practicable to a single set of circumstances."  Sall's Amended Complaint—which is largely

presented in narrative form, proceeding from one seemingly unrelated individual or factual

scenario to the next—does not meet these requirements.  (*See, e.g.*, Doc. 7-2 at 3 ("Back to my

story, I arrived through JFK airport's port of entry."), 8 ("If you are reading this, remember you

do not know me and I do not know you, but we share a divine concept of fellow-feeling and have

a common humanity."), 19 ("Back to the story, I remember, [a] couple of years ago[,] I was

walking from Price Chopper . . ."), 45 ("In helping you understand the insanity I was dealing

with, here is a story between the Director and I."), 50 ("Here is an example of what I called

lesbian or feminist-racism that permeates in Vermont culture."), 51 ("I [have] heard people who I

know personally sa[y] loudly the Muslims are our enemies[;] one example is Joseph . . . ."),

55 ("Hannah was a hardcore feminist, a classical marxist feminist, and radical feminist."),

56 ("Charlene . . . is a bigot and misandrist who passionately and obsessively hate[s] Muslim

men.").)

The "key" to Rule 8(a)'s pleading requirement is simply "whether adequate notice [of the

claim] is given."  *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004).  Adequate notice is "that

which will enable the adverse party to answer and prepare for trial, allow the application of res

judicata, and identify the nature of the case so it may be assigned the proper form of trial."

*Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (internal quotation marks omitted); *see*

*Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  In other words, the complaint must leave

the defendant with "a fair understanding of what the plaintiff is complaining about" and

knowledge of "whether there is a legal basis for recovery."  *Ricciuti v. N.Y.C. Transit Auth.*,

941 F.2d 119, 123 (2d Cir. 1991). Dismissal of a complaint for failure to comply with the notice requirements of Rule 8 is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin*, 861 F.2d at 42. When dismissal is granted on these grounds, the court "normally grants leave to file an amended pleading that conforms to the requirements of Rule 8." *Id.*

Sall's Amended Complaint is not "a short and plain statement" of his claims showing that he is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). Its imprecise and frequently conclusory allegations arguably are insufficient to provide the type of notice necessary for Defendants to respond and prepare for trial. However, it is not necessary to determine whether the Amended Complaint meets federal pleading standards under the Rules because its substantive deficiencies warrant dismissal for the reasons explained above. Therefore, I recommend that the Court dismiss the Amended Complaint as to the Municipal Defendants without ruling on the Amended Complaint's compliance with the pleading requirements of the Federal Rules of Civil Procedure.

## VIII. Leave to Amend

Read liberally, Sall's Oppositions to the Motions to Dismiss could be interpreted to request leave to amend the Amended Complaint with respect to the allegations against the Moving Defendants. (*See* Docs. 88–92, 94.) These Oppositions contain both new facts and new law. (*Id.*) To the extent that Sall may be seeking to amend the Amended Complaint, I recommend denying leave to amend.

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112

(2d Cir. 2000) (internal quotation marks omitted).  An opportunity to amend is not required,
however, where "[t]he problem with [the complaint] is substantive," such that "better pleading
will not cure it" and thus amendment is "futile."  *Id.* (a "futile request to replead," even by a *pro
se* litigant, "should be denied"); *see Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) ("leave to
amend a complaint need not be granted when amendment would be futile").  An amendment is
"futile" if the amended pleading would not withstand a motion to dismiss.  *See Jones v. Phelps
Corp.*, No. 3:14–cv–84 (GLS/DEP), 2014 WL 2195944, at *3 (N.D.N.Y. May 22, 2014).

        Sall has already amended his complaint once.  He has also included new facts and
"counts" in his various Oppositions to the Motions under consideration.  However, he has not
stated any facts or law that cure the Amended Complaint's deficient allegations against the
Moving Defendants.  For example, in his Opposition to the Municipal Defendants' Motion to
Dismiss, Sall asserts a vague claim of "[f]reedom of movement or migration," arguing that "the
Municipalities['] policy of not wanting us outside the main City Centers of the County" indicates
that these Municipalities "have implicitly instituted policies within their local townships to
harass[] us even if we are driving through."  (Doc. 88 at 11.)  There is no legal claim based on
those alleged facts and amending the Amended Complaint to add those facts would be futile.
Sall also includes vague and conclusory claims in his Oppositions, similar to those contained in
his Amended Complaint: "I have suffered discriminatory traffic stops, racial profiling, or
discriminatory harassment by the local Municipal Police Departments who are under the orders
of Municipalit[y] officials" (*id.*), and: "this culture of racial abuse[] is not an isolated case[] but it
is the norm because everyone does it as the saying goes" (*id.* at 12).  However, neither the
Amended Complaint nor Sall's Opposition filings state specific facts to substantiate his general
allegations of discrimination.  As discussed above, conclusory claims of racial discrimination

24

without supporting factual allegations are insufficient to survive a motion to dismiss. *See, e.g.*, *Thomas*, 143 F.3d at 37; *Yusuf*, 827 F. Supp. at 955–56; *Hollins*, 2020 WL 1033335, at *7. The "problem with the Amended Complaint is substantive," such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112.

Accordingly, I recommend DENYING leave to amend the claims against the Moving Defendants because amendment would be futile.

## Conclusion

For the reasons explained above, I recommend GRANTING each of the Motions to Dismiss considered in this Report and Recommendation (Docs. 43, 46, 47, 60, 65, 67, 76), without leave to amend. I therefore recommend DISMISSING from this case with prejudice Defendants State of Vermont, the Vermont State Police, Burlington Police Department, South Burlington Police Department, the Municipal Defendants, the City of Burlington, and the City of South Burlington. As explained in this Report and Recommendation:

- The Amended Complaint fails to plead a viable discrimination claim against the Moving Defendants under § 1983 and the Fourteenth Amendment's Equal Protection Clause based on Sall's allegations of negative interactions with several unnamed police officers in Vermont and his bare assertions that various police officers in this State, Burlington residents, and locations in Chittenden County are racially discriminatory or otherwise biased against Sall because of his religion or national origin. Furthermore, the Amended Complaint does not allege, as required under § 1983, that the Moving Defendants deprived Sall of a federal right or acted under color of state law to deprive Sall of that right. (Docs. 43, 46, 47, 60, 65, 67, 76.)

- The Eleventh Amendment bars the Amended Complaint's claims for monetary damages against the State Defendants.  (Doc. 43.)

- To the extent that Sall brings claims against municipal police departments, including but not limited to the Burlington Police Department and the South Burlington Police Department, the claims should be dismissed because municipal police departments are not subject to suit under § 1983.

- The claims against the Municipal Defendants should be dismissed because the Amended Complaint does not allege any deliberate conduct on the part of any of the Municipal Defendants, or of any policy, regulation, or custom of those Municipalities that caused Sall to be deprived of a constitutional right.  (Docs. 47, 76.)


Dated at Burlington, in the District of Vermont, this 14th day of January 2022.

_/s/ Kevin J. Doyle_____
United States Magistrate Judge


Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).