UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Abdullah Saajoh Sall,

    Plaintiff,

    v.

Sarah Fair George et al.,

    Defendants.

Civil Action No. 2:20–cv–214-cr

## REPORT AND RECOMMENDATION
### (Doc. 82)

Plaintiff Abdullah Saajoh Sall, proceeding *pro se*, brings this action under 42 U.S.C.

§ 1983 against Defendants Sarah George, the Chittenden County State's Attorney's Office,

Seven Days Newspaper, the Vermont State Police, "Chittenden County Police Departments," the

City of Burlington, Chittenden County, Local Motion, the Greater Burlington YMCA, and

others.[1]  (Doc. 7 at 1–3, 5.)  Sall alleges that starting in 2012, he experienced discrimination in

Chittenden County, Vermont based on his race, religion, and national origin, causing him

chronic trauma, depression, and anxiety.  (*Id.* at 3–5.)  Sall claims that "[t]he City of Burlington

and Chittenden [County] as a whole . . . is a racist safe h[]aven city with a culture and tradition

of subtle racism as the underbelly of the community" (Doc. 7-2 at 37), and that "[t]he residents

---

[1]  In the caption of the Amended Complaint, Sall identifies only five Defendants: "Chittenden County Townships, Chittenden County State Attorney's Office, Local Motion, Chittenden Police Departments, [and] Seven Day[s]."  (Doc. 7 at 1.)  On pages two and three of the Amended Complaint, Sall names several other Defendants, including Chittenden County State's Attorney Sarah George and the Vermont State Police, among others.  (*Id.* at 2–3.)  In his prayer for relief, Sall references additional Defendants, including the Greater Burlington YMCA.  (*Id.* at 5.)  Sall attaches to the form Amended Complaint a 59-page document entitled "Amended Complaint, Abdullah Sall Self-[I]ntro," in which he lists some 35 Defendants, including the Defendants identified above, 16 "Chittenden County townships," and 10 "Chittenden County Police Departments."  (Doc. 7-2 at 7.)

of Burlington, Chittenden County, and Vermont convey their racial disdain in so many different ways" (*id.* at 38).  As a black Muslim man who immigrated to America from Africa (*id.* at 3), Sall alleges that he has been "made to pay the price" in a culture that "sees black m[e]n as offenders, aggressive, or violent criminals" (*id.* at 38).  Sall seeks $300 million dollars in restitution, to "help [account for] all the injustices [he] was made to endure."  (Doc. 7 at 5.)

In this Report and Recommendation, the Court considers the Motion to Dismiss of Defendant the Greater Burlington YMCA (YMCA).  (Doc. 82.)  Sall has filed an Opposition to the Motion (Doc. 97), and the YMCA has filed a Reply (Doc. 106).  For the reasons discussed below, I recommend that the Motion (Doc. 82) be DENIED in part and GRANTED in part, and that Sall be granted leave to amend the Amended Complaint with respect to his claims against the YMCA.

<u>**Relevant Facts and Procedure**</u>

Sall initially filed this action in the District of Massachusetts on November 12, 2020. (Doc. 1.)  Approximately one month later, the case was transferred to this District.  (Docs. 3, 5.) On January 19, 2021, Sall filed the Amended Complaint.  (Doc. 7.)  Sall attaches two documents to his Amended Complaint: (1) a "Final Determination" of the Vermont Human Rights Commission (HRC), dated June 25, 2020, finding that the "Department of State's Attorneys and Sheriffs [and] the Chittenden County State's Attorneys' Office . . . illegally discriminated against . . . Sall . . . on the basis of national origin, race, and skin color, in violation of Vermont's Fair Employment Practices Act" (Doc. 7-1 at 2); and (2) a document titled "Amended Complaint Abdullah Sall Self-[I]ntro," which serves as the primary factual basis for Sall's allegations in this case (Doc. 7-2).

Sall's "Self-[I]ntro" document, which is referred to in this Report and Recommendation as the Amended Complaint,[2] is 59 pages and presented largely in narrative form. (*See id.*) In the Amended Complaint, Sall describes his experiences living in the Burlington, Vermont community, including among other things, his volunteer work at the Boys and Girls Club in Winooski, his service as a soccer coach for the Winooski YMCA, and with the Chittenden Emergency Food Shelf; his service as a Chittenden County Court Diversion review board member; his candidacy for Burlington City Council; his work with T.J. Donovan and Sarah George at the Chittenden County State's Attorney's Office; his work at the YMCA and Local Motion; and his eventual move from Vermont to Texas. (*See id.*) Throughout these experiences, Sall states that he was subjected to discrimination based on his race, religion, and ethnicity. (*See, e.g.*, *id.* at 40, 41, 53.) Sall alleges that he is entitled to $300 million in damages under 42 U.S.C. § 1983 due to Defendants' purported discriminatory treatment of him. (Doc. 7 at 3–5.)

Sall's Amended Complaint contains an approximately nine-page section entitled "Greater Burlington YMCA" that focuses exclusively on the YMCA's allegedly unlawful conduct. (Doc. 7-2 at 27–35.) For purposes of recommending a disposition on the YMCA's Motion to Dismiss, the Court accepts as true the factual allegations contained in the "Greater Burlington YMCA" section, and the remainder of the Amended Complaint. (Docs. 7, 7-2). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[2] The Court refers to Sall's "Self-[I]ntro" document as the Amended Complaint because it is attached to the Amended Complaint and it contains Sall's factual allegations in this action. (*See* Doc. 7 at 4, ¶ III(C); *id.* at 5, ¶ IV; Doc. 7-2.) *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit . . . ." (internal quotation marks omitted)).

Sall apparently worked for the YMCA for a period of "years." (Doc. 7-2 at 29). The Amended Complaint does not specify the precise dates of Sall's employment with the YMCA.[3] In his Opposition to the YMCA's Motion to Dismiss, although not stating any specific dates, Sall alleges that he was "hired . . . to work for the YMCA" "around early 2015" (Doc. 97 at 4), and that he was "working at the YMCA part[ ]time" (*id.* at 8). He further states that his work at the YMCA involved "signing up members[], scanning members, and so on" at "the front station desk" (*id.* at 4); that he was "restricted . . . to only answering phone calls, doing laundry, and scanning people" (*id.* at 15); and that he "was responsible for the evening shift at [the] Burlington YMCA and supervis[ing] the evening shift at the Winooski YMCA" (*id.*).

According to Sall, he was "blame[d] for anything that happened [at the YMCA] based on [his] religion, race, and national origin," and "[u]nder [the YMCA's] leadership[, he] . . . endured a sustain[ed] campaign of racial abuse, religious abuse, and ethnic abuse." (Doc. 7-2 at 27.) He claims he was "constantly criticized, scapegoated, ignored, renounced, and abused." (*Id.*) The Amended Complaint repeatedly refers to Gary Vassar, the YMCA's "HR Director"; Mike Cioffi, the YMCA's "Membership Director"; and Graham Gowen, whose position at the YMCA is unclear. (*Id.* at 27–30.) Sall claims that together Vassar and Cioffi "used [him] for their own gain and abused [him] conveniently." (*Id.* at 27.) Sall further alleges that Cioffi and Gowen "created mistakes and amplified [them] using [his] racial, religious, and ethnic identity as a qualifying factor." (*Id.* at 28.) He claims Gowen accused him of "fraternizing with white girls,"

---

[3] The YMCA attaches as an Exhibit to its Motion to Dismiss the Affidavit of Michele O'Day, who is the YMCA's Senior Director of Human Resources responsible for maintaining personnel files on current and former employees. (*See* Doc. 82-1, ¶¶ 1, 3.) O'Day avers that, based on her review of Sall's electronic personnel record—a copy of which is attached as Exhibit A to the Affidavit—Sall was employed by the YMCA "between on or about September 03, 2013 and July 17, 2016." (*Id.* ¶ 5.) As discussed in this Report and Recommendation, however, the Court may not consider this evidence in its analysis of the YMCA's Motion to Dismiss, as: (a) the facts alleged in the Affidavit are not alleged in either the Amended Complaint or in documents attached to it or incorporated by reference, and (b) the Court may not properly take judicial notice of this evidence under Rule 201 of the Federal Rules of Evidence. *See Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014).

lacking in clerical skills, and failing to separate his personal life from his work life. (*Id.* at 29.) Further, Sall claims that these individuals from the YMCA "fabricated racial, ethnic, and religious stigma in the workplace that [was] used on a daily basis to attack [him]." (*Id.* at 28–29.) Sall alleges that, "for years," Gowen, Vassar, and Cioffi "racial[ly] tormented, yelled [at], heckled, hounded, . . . and taunted" him, "embody[ing] the spirit of systemic racism and incompetence [at the] supervisory level." (*Id.* at 29.) Sall alleges that Gowen in particular "is manipulative, cunning, deceptive, and untruthful," and that he "created a cycle of friends in various YMCA departments to gossip and intimidate [Sall]." (*Id.* at 28.)

The Amended Complaint names several other individuals, some apparently employed by the YMCA and others who may not be, who allegedly verbally abused and otherwise harassed Sall. (*Id.* at 30–34.) According to Sall, the "insinuation" is that his "religious, ethnic, and national origin" was the cause of the abuse and harassment. (*Id.* at 32; *see, e.g.*, *id.* at 31 ("Julie Ann Held[] [is] a well-documented racist at the YMCA.").) According to Sall, he was "racially abused every night [that he] worked [for the YMCA] and falsely accused for everything the next morning." (*Id.* at 35.) He further claims that he was "sometimes denied time off" and was "yelled at and spok[en] to in a demeaning manner" at the YMCA. (*Id.*)

In his Opposition to the YMCA's Motion to Dismiss, Sall expands upon the allegation that Gowen accused him of "fraternizing [with] young white women," explaining that Gowen and others at the YMCA found such fraternizing "offensive and threatening due to the fact [that] they considered [Sall] as sexist[] [and] misogynist for being a Muslim male, African male, and black male." (Doc. 97 at 13.) Sall further alleges in his Opposition that the YMCA's "leaders" "developed a sexual harassment scheme to entrap [him] and . . . to get rid of [him]," which involved "encourag[ing] new female co-workers to flirt with [him] and build a trust with [him]

and then rescind consent." (*Id.* at 15.)  Sall presents other new facts in his Opposition, some of which seem to have no connection to the events at issue in this litigation.[4]

Although the Amended Complaint is not clear as to the legal basis for the claims asserted against the YMCA,[5] it appears to allege violations of Title VII because it suggests that Sall experienced a hostile work environment while working at the YMCA due to his race, religion, and ethnicity.  (*See, e.g.*, Doc. 7-2 at 27–29.)  Sall's Opposition confirms that he brings his claims against the YMCA under Title VII.  (*See* Doc. 97 at 19–20 (listing the following "Counts" under the heading "Title VII of the Civil Rights Act of 1964"[6]: "Racial Harassment/Aversive Hostilities," "Religious Harassment/Hostilities," "National Origin/Cultural Hostilities," "Failure to Promote in Violation of Title VII," and "Retaliation in Violation of Title II"); *see also* Doc. 106 at 2 ("For the purposes of its [M]otion [to Dismiss], the YMCA assumed the intent of

---

[4]  For example, Sall describes a woman yelling at him after he brought a cup of soup into the Shaws Supermarket on Shelburne Road in South Burlington, claiming the incident left him "embarrassed and humiliated." (*Id.* at 5.)

[5]  Sall brings this lawsuit generally under 42 U.S.C. § 1983.  (*See* Doc. 7 at 3–5.)  To the extent that he attempts to plead a § 1983 claim against the YMCA, the claim is insufficient because the Amended Complaint does not allege that the YMCA acted "under color of state law" to violate "a right secured by the Constitution and laws of the United States." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Courts in this Circuit have determined that the YMCA is not subject to suit under § 1983 because it is not a state actor. *See, e.g.*, *Molina v. YMCA*, No. 08-CV-577 (DLI), 2008 WL 789888, at *2 (E.D.N.Y. Mar. 21, 2008) (dismissing claims against the YMCA under § 1983 "because neither [the YMCA] nor its staff members are 'state actors'"); *Valle v. The YMCA of Greater New York*, No. 05 Civ. 5318(LTS)(FM), 2006 WL 2571946, at *7 (S.D.N.Y. July 6, 2006) (recommending dismissal of § 1983 claim and taking judicial notice that the YMCA is not a state actor due to its status as a private, not-for-profit corporation under New York law), *report and recommendation adopted*, 2006 WL 2583073 (Sept. 6, 2006); *but see Smith v. Young Men's Christian Ass'n of Montgomery, Inc.*, 462 F.2d 634, 642, 647 (5th Cir. 1972) (upholding district court finding that the Montgomery YMCA acted as a "quasi[-]public agency" and "under color of law," given that it "was so closely entwined with the City of Montgomery," as evidenced by its enjoying tax-exempt status, utilizing City property, conducting City programs, and deriving income from the City).

[6]  Sall also references in this heading 18 U.S.C. § 245 (*see id.* at 19).  This statute does not apply to Sall's claims, as it punishes only "violent conduct motivated by racial animus," *United States v. Makowski*, 120 F.3d 1078, 1080 (9th Cir. 1997); *see Hill v. Com. of Pa.*, 439 F.2d 1016, 1022 (3d Cir. 1971) ("Section 245(b) is aimed only at intimidation by 'force or threat of force' in the sense of violent activity."), and it "does not in terms confer substantive rights; it is solely a criminal statute permitting federal prosecution for interference with a long list of activities," *People v. State of New York*, 424 F.2d 697, 702 (2d Cir. 1970).

[Sall's] Amended Complaint was to proceed against [the YMCA] pursuant to Title VII.  [Sall's] [O]pposition now confirms this assumption by repeatedly referring to Title VII.").)

Ordinarily, a plaintiff may not attempt to amend his complaint by asserting new facts or theories for the first time in opposition to a pending motion to dismiss.  *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (noting that a plaintiff cannot "amend" its pleading through its opposition papers); *In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 541 (S.D.N.Y. 2021) (holding that "a plaintiff may not raise new facts in opposing dismissal and ask the Court to rely on those facts in determining whether he or she has stated a claim"); *In re China Mobile Games & Ent. Grp., Ltd. Sec. Litig.*, No. 14-CV-4471 (KMW), 2016 WL 922711, at *5 n.9 (S.D.N.Y. Mar. 7, 2016) ("Plaintiffs, likely realizing the weaknesses in the Complaint, attempt to improperly plead new facts in their Opposition to the Motion to Dismiss. . . .  The Court does not consider these allegations because they were not part of the Complaint."); *In re GeoPharma, Inc. Sec. Litig.*, 399 F. Supp. 2d 432, 445 n.100 (S.D.N.Y. 2005) ("[N]one of these new facts appear in the Complaint, which cannot be amended by the brief in opposition to a motion to dismiss.").

However, the Court may consider new factual allegations raised in a *pro se* plaintiff's opposition papers to the extent they are consistent with the Amended Complaint, and treat them as amendments to the Amended Complaint.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) ("A *pro se* plaintiff may not raise entirely new causes of action for the first time in his opposition papers, but the Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint." (internal quotation marks omitted)).  Therefore, this Report and Recommendation accepts as true

the new factual allegations contained in Sall's Opposition—to the extent that those allegations are consistent with the allegations pleaded in the Amended Complaint—and draws all reasonable inferences in Sall's favor. *See Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 289 n.3 (S.D.N.Y. 2020).

## Analysis

### I.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint "provide the grounds upon which [its] claim rests," *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), and allege "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff need not provide "detailed factual allegations" to support the claims alleged in the complaint, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In assessing the adequacy of the pleadings, the court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). In cases brought by *pro se* plaintiffs, the court must construe the complaint "liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), reading it "to raise the strongest arguments . . . suggest[ed]," *Bertin v. United States*, 478 F.3d 489, 491

(2d Cir. 2007) (internal quotation marks omitted).  Even *pro se* litigants, however, "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*."  *Brickhouse v. City of New York*, No. 09 CIV. 9353(NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010); *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[*P*]*ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." (internal quotation marks omitted)).  The court need not credit the complaint's "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, [which are] supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678; *see Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) ("We are not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." (internal quotation marks omitted)).

On a motion to dismiss, the court is limited to reviewing the complaint, any written instrument attached to the complaint, statements or documents incorporated in the complaint by reference, and "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  *ATSI Commc'ns*, 493 F.3d at 98.  The court may also consider "any matters of which judicial notice may be taken," *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995), which includes facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

## II.     Statute of Limitations / Exhaustion of Administrative Remedies

### A.     Statute of Limitations

The YMCA contends that Sall's Title VII claims must be dismissed as untimely. "Although the statute of limitations is ordinarily an affirmative defense that must be raised in an

answer, the issue may be decided at the motion to dismiss stage if it appears on the face of the complaint." *Miller v. Vt. Assocs. for Training & Dev.*, Case No. 2:20-cv-178, 2021 WL 535816, at *3 (D. Vt. Feb. 12, 2021) (citing *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014)).  Dismissal on statute-of-limitations grounds is appropriate on a motion to dismiss "only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999); *see* 5 WRIGHT & MILLER, FED. PRAC. & PROC. § 1226 (3d ed. 2004) ("[T]he current trend in the cases is to allow [timeliness] to be raised by a motion to dismiss under Rule 12(b)(6) when the defect appears on the face of the complaint.").  It is the defendant's burden to establish a statute-of-limitations defense. *See Beaupre v. O'Connor*, No. 2:14-CV-256, 2015 WL 5530180, at *2 (D. Vt. Sept. 18, 2015).

Before an aggrieved party may bring an action in federal court for an unlawful employment practice, he or she must exhaust certain administrative remedies, including filing a timely charge with the Equal Employment Opportunity Commission (EEOC) or a parallel state or local agency "to grant or seek relief from such practice," and obtaining from the EEOC or state agency a right-to-sue letter. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82–83 (2d Cir. 2001) (quoting 42 U.S.C. § 2000e-5(e)); *see Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015).  This requirement "applies to *pro se* and counseled plaintiffs alike." *Fowlkes*, 790 F.3d at 384.  The purpose of the exhaustion requirement is "to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Id.* (internal quotation marks omitted).  "[A] Title VII plaintiff generally must file a charge of discrimination with the EEOC 'within three hundred days after the alleged unlawful employment practice occurred,' 42 U.S.C. § 2000e-5(e)(1), and must then file an action in federal court within 90 days of receiving a right-to-sue letter from the agency." *Duplan v. City of New York*, 888 F.3d 612,

621–22 (2d Cir. 2018) (citing 42 U.S.C. § 2000e-5(e)(1), § 2000e-5(f)(1)).[7]

As this Court recently noted in a Title VII case, a statute-of-limitations defense "will not generally bar claims unless factual allegations in the complaint clearly show that the claim is untimely." *Willis v. Perdue*, Case No. 2:20-CV-00004, 2021 WL 915224, at *8 (D. Vt. Mar. 10, 2021) (internal quotation marks omitted). The Court further noted that "numerous courts in this Circuit have held that a Title VII complaint should not be dismissed for failure to plead the dates of the alleged discrimination." *Id.* (quoting *Langford v. Int'l Union of Operating Eng'rs, Local 30*, 765 F. Supp. 2d 486, 498 (S.D.N.Y. 2011)).

It is not clear from the face of Sall's Amended Complaint whether his claims are untimely. The Amended Complaint contains no allegations as to the dates of: Sall's employment with the YMCA; the alleged unlawful employment practice(s); Sall's filing of a charge with the EEOC or state agency; or Sall's receipt of a right-to-sue letter from the EEOC or state agency. Without this information, the Court cannot determine whether the claim against the YMCA was timely filed in this Court.

The YMCA attaches the Affidavit of Michele O'Day, the YMCA's Senior Director of Human Resources, to establish the dates of Sall's employment.[8] (*See* Doc. 82 at 9 (citing Doc. 82-1); *see also* Doc. 82-2.) O'Day states in the Affidavit that Sall's employment with the

---

[7] "Discrimination claims under Title VII . . . must ordinarily be filed with the EEOC within 180 days of the date on which the alleged unlawful employment practice occurred." *Duplan*, 888 F.3d at 621 n.7 (internal quotation marks omitted) (quoting *Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 (2d Cir. 1996)). The Second Circuit has explained that "[t]he three-hundred-day look-back period is in fact an extended period that Title VII affords to plaintiffs complaining about conduct that occurred in a state with its own antidiscrimination enforcement mechanisms." *Id.* Vermont is such a state. *See Gadbois v. Rock-Tenn Co., Mill Div.*, 984 F. Supp. 811, 817 (D. Vt. 1997).

[8] According to the YMCA, Sall "references his last working for the YMCA in 2016." (Doc. 82 at 9 (citing Doc. 7-2 at 31).) However, the cited page of the Amended Complaint does not appear to reference Sall's last day with the YMCA, but rather describes the year YMCA member Chris Heimer lost his member status, allegedly due to inappropriate comments he made to Sall at the YMCA.

YMCA ended in July 2016 (*see* Doc. 82-1, ¶ 5).  If the Court considers the O'Day Affidavit, this evidence demonstrates that Sall has failed to timely file his claim against the YMCA because Sall did not file this case until November 2020 (*see* Doc. 1), well beyond the 300-day deadline to file a charge with the EEOC/state agency plus the 90-day deadline to file suit after receiving a right-to-sue letter.[9]  However, at this stage, the Court may not consider the O'Day Affidavit to recommend a disposition on the YMCA's Motion to Dismiss.

The YMCA contends that the Court may consider the Affidavit and the attached personnel document because the personnel document has been incorporated into the Amended Complaint by reference and must otherwise be considered integral to the Amended Complaint. (Doc. 82 at 3 n.2.)  The YMCA cites *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016) as authority permitting the Court to consider these documents to dismiss Sall's claims on statute-of-limitations grounds.  In *Nicosia* the court explained:

> A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.

834 F.3d 220, 230 (2d Cir. 2016) (citations and internal quotation marks omitted).  "A necessary prerequisite for taking into account materials extraneous to the complaint is that the plaintiff *rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is

---

[9]  The 390-day period assumes that Sall had until approximately 300 days after his last day of employment with the YMCA to file a charge, and then another 90 days from receipt of a right-to-sue letter to file the claim with this Court.  However, upon receipt of the charge, the EEOC/state agency has 180 days to issue the right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1); *Gibb v. Tapestry, Inc.*, No. 18-CV-6888 (LAP), 2018 WL 6329403, at *4 (S.D.N.Y. Dec. 3, 2018).  Therefore, reading the Amended Complaint in the light most favorable to Sall, he potentially would have had 570 days from his last day of employment with the YMCA—i.e., 300 days from that date to submit a charge to the EEOC/agency, 180 days from that date for the EEOC/agency to review the charge and issue a right-to-sue letter, and 90 days from that date to file suit in this Court.  Assuming the accuracy of the YMCA's representation that Sall's last day of employment with the YMCA was July 17, 2016, it would appear that Sall was required to file his lawsuit in this Court by February 7, 2018, which renders the filing of the lawsuit on November 12, 2020 untimely.

not enough." *Id.* at 231 (internal quotation marks omitted). "This generally occurs when the material considered is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Id.* (internal quotation marks omitted).

As defense submissions, the O'Day Affidavit and the attached personnel document are clearly not attached as exhibits to the Amended Complaint, nor are they incorporated by reference in the Amended Complaint. Moreover, unlike the contract or other legal document used as an illustration of properly considered extraneous material in *Nicosia*, Sall's Amended Complaint does not "rel[y] heavily upon [the Affidavit's or the personnel document's] terms and effect, thereby rendering [them] integral to" the Amended Complaint. *Id.* (internal quotation marks omitted). Therefore, *Nicosia* does not permit the Court's consideration of these documents on a motion to dismiss.

Although the court may consider those facts alleged in the complaint and documents attached to it or incorporated by reference, *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014), the court errs when it "consider[s] affidavits or exhibits submitted by defendants, or relies on factual allegations contained in legal briefs or memoranda," *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (alteration in original) (citation and internal quotation marks omitted). In fact, "[v]acatur is required even where the court's ruling simply mak[es] a connection not established by the complaint alone or contains an unexplained reference that raises the possibility that it improperly relied on matters outside the pleading in granting the defendant's Rule 12(b) motion." *Id.* at 84 (second alteration in original) (internal quotation

marks omitted).  Accordingly, the Court may not consider O'Day's Affidavit or the attached personnel document at this stage of the proceedings.

The YMCA alternatively argues that the Court may take judicial notice of the facts alleged in O'Day's Affidavit and the attached personnel document.  (*See* Doc. 82 at 3 n.2.) Under Federal Rule of Evidence 201(b), the court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  For example, a court may take judicial notice of the records of state administrative procedures, as these are public records, *see Evans v. N.Y. Botanical Garden*, No. 02 Civ.3591 RWS, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002), or of Department of Corrections Directives, as these are not subject to reasonable dispute, *see Cameron v. Menard*, Civil Action No. 5:18-cv-204-gwc-jmc, 2019 WL 4675500, at *5 (D. Vt. Aug. 13, 2019), *report and recommendation adopted*, 2019 WL 4674821 (Sept. 25, 2019).  Such documents, however, may be judicially noticed "only to establish their existence and legal effect, or to determine what statements [they] contained . . . [,] not for the truth of the matters asserted [therein]."  *Liang v. City of New York*, No. 10–CV–3089 (ENV)(VVP), 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013) (first alteration and omission in original) (internal quotation marks omitted).  The records offered by the YMCA are not subject to judicial notice under Federal Rule of Evidence 201(b). *See, e.g.*, *Archuleta v. Avcorp Composite Fabrication Inc.*, Case No. CV 18-8106 PSG (FFMx), 2019 WL 1751830, at *2 (C.D. Cal. Feb. 5, 2019) (declining to judicially notice "a declaration from a human resources employee . . . discussing the company's employment records"). O'Day's Affidavit and the attached personnel document do not meet the criteria to permit

judicial notice of their contents, as they are not documents "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

When matters outside the pleadings are presented in response to a Rule 12(b)(6) motion to dismiss, "a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl*, 210 F.3d at 83 (internal quotation marks omitted). The YMCA does not request that the Court convert its Motion to Dismiss into a motion for summary judgment. The Court should exercise its discretion in this context to decline to convert the Motion to Dismiss into a motion for summary judgment, without prejudice for the YMCA to raise this timeliness issue at the summary judgment stage. *See Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) ("Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment . . . ." (internal quotation marks omitted)).

Accordingly, because the Amended Complaint does not "clearly show[ ] [that] the claim is out of time," *Harris*, 186 F.3d at 250, I recommend that the Court decline to dismiss the Amended Complaint on statute-of-limitations grounds.

## B.    Exhaustion of Administrative Remedies

The Court next considers whether the Amended Complaint should be dismissed due to Sall's failure to exhaust administrative remedies before bringing this lawsuit against the YMCA. Because exhaustion is an affirmative defense, "the defendant bears the burden of establishing the plaintiff's failure to timely exhaust his administrative remedies." *Broich v. Inc. Vill. of*

*Southampton*, 650 F. Supp. 2d 234, 246 (E.D.N.Y. 2009); *see Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) ("[W]e hold that the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense.").  A plaintiff is "not required to demonstrate at the pleading stage that his claims were administratively exhausted.  *DiPetto v. U.S. Postal Serv.*, 383 F. App'x 102, 104 (2d Cir. 2010) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

"Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal court."  *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (internal quotation marks omitted); *see Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) ("[E]xhaustion of administrative remedies through the EEOC stands as an essential element of Title VII's statutory scheme, and one with which defendants are entitled to insist that plaintiffs comply." (citation and internal quotation marks omitted)).  The Second Circuit has explained that:

> [b]efore bringing a Title VII suit in federal court, an individual must first present the claims forming the basis of such a suit . . . in a complaint to the EEOC or the equivalent state agency[,] [and] [t]he complainant must file the complaint with the relevant agency within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a 'Notice of Right to Sue' letter from the EEOC.

*Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (citation and internal quotation marks omitted).

The Second Circuit, however, has "repeatedly held" that the failure to exhaust administrative remedies is not a jurisdictional requirement.  *Hardaway*, 879 F.3d at 489; *see Littlejohn*, 795 F.3d at 322 n.19 ("While [plaintiff's] failure to exhaust her administrative remedies did justify the dismissal of the claim, it was not for lack of jurisdiction."); *Francis*,

235 F.3d at 768 ("[P]resentation of a Title VII claim to the EEOC is not a jurisdictional [prerequisite], but only a precondition to bringing a Title VII action that can be waived by the parties or the court . . . ." (second alteration in original) (internal quotation marks omitted)). Because the failure to exhaust is not an element of a Title VII claim but rather an affirmative defense, *Hardaway*, 879 F.3d at 491, exhaustion need not be pleaded or demonstrated in a complaint, and "the burden of pleading and proving Title VII exhaustion lies with defendants." *Id.*; *see Bockus v. Maple Pro, Inc.*, Case No. 5:19-CV-237, 2020 WL 5015432, at *3 (D. Vt. June 19, 2020) ("The Supreme Court's recent decision in *Fort Bend County, Texas v. Davis* . . . confirms that Title VII's claim-processing rule is mandatory (although not jurisdictional), but does not alter the principle that exhaustion is an affirmative defense and that it is [the defendant's] burden to plead it."), *aff'd*, 850 F. App'x 48 (2d Cir. 2021). Moreover, the exhaustion requirement, like a statute of limitations, is subject to equitable defenses including waiver, estoppel, and equitable tolling. *Fernandez v. Chertoff*, 471 F.3d 45, 58 (2d Cir. 2006).

Courts generally deny motions to dismiss for failure to exhaust Title VII's administrative requirements where that failure does not "appear[] on the face of the complaint." *McCain v. Sprint/United Mgmt. Co.*, Case No. 5:16-CV-18, 2017 WL 11165322, at *2 n.2 (D. Vt. June 29, 2017); *see Vann v. Persico*, No. 20-CV-628 (KMK), 2021 WL 1198844, at *5 (S.D.N.Y. Mar. 30, 2021); *Willis*, 2021 WL 915224, at *8 (holding that administrative remedies defense "will not generally bar claims unless factual allegations in the complaint clearly show that the claim is untimely" (internal quotation marks omitted)); *Bockus*, 2020 WL 5015432, at *3 (disagreeing with defendant's contention that dismissal was warranted for failure to plead the absence of the exhaustion defense, and stating that "[n]othing on the face of the Complaint indicates that [plaintiff] has failed to exhaust his Title VII . . . claims," and "[t]he court cannot infer from the

Complaint's silence on the question of exhaustion that [plaintiff] has failed to exhaust his administrative remedies").

For example, in *McCain v. Sprint/United Management Co.*, 2017 WL 11165322, at *2 n.2, this Court denied a motion to dismiss for failure to exhaust Title VII's pre-lawsuit filing requirements because "[n]othing in the amended complaint explicitly state[d] that [the p]laintiff did not exhaust his administrative remedies or preclude[d] the possibility that he did exhaust such remedies." The Court explained that the complaint "[wa]s unaccompanied by any evidence, even an affidavit, that purport[ed] to demonstrate [the p]laintiff's failure to exhaust"; and found that the motion to dismiss "wrongly assume[d] exhaustion to be jurisdictional" and improperly "relie[d] only on the absence of allegations in the complaint relating to exhaustion." *Id.* at *2; *cf. Willis*, 2021 WL 915224, at *7 ("Because Plaintiff's [complaint] contains an "Exhaustion of Administrative Remedies" section . . . and references documents attached to the [complaint] from the administrative process, consideration of Defendant's administrative exhaustion affirmative defense is proper within the context of his motion to dismiss."); *Naghibolhosseini v. Haralick*, 1:19-cv-05348-MKV-KNF, 2020 WL 5701824, at *3 (S.D.N.Y. Sept. 24, 2020) ("Dismissal of Plaintiff's claim is proper because the pleadings evidence Plaintiff's failure to exhaust his administrative remedies[;] Plaintiff states clearly on the face of the complaint that he did not file a charge of discrimination against Defendants with the EEOC and that he had not received a Notice of Right to Sue from the EEOC."); *Arnold v. Research Found. for State Univ. of N.Y.*, 216 F. Supp. 3d 275, 286–87 (E.D.N.Y. 2016) ("Although a plaintiff is not required to explicitly plead or demonstrate exhaustion at the pleading stage, a court should nonetheless grant a motion to dismiss pursuant to 12(b)(6) for failure to exhaust if it

is clear from the face of the complaint that a plaintiff has not exhausted their remedies." (citation omitted)).

The Amended Complaint does not plead any facts regarding the exhaustion of Sall's claims against the YMCA. (*See* Docs. 7, 7-1, 7-2.) Although an attachment to the Amended Complaint indicates that Sall filed a charge with the HRC against parties other than the YMCA—namely, the Department of State's Attorneys and Sheriffs and the Chittenden County State's Attorney's Office—and based on facts unrelated to the claims against the YMCA (*see* Docs. 7-1, 39-1),[10] the Amended Complaint does not indicate whether Sall filed a charge with the EEOC or a parallel state agency regarding his employment discrimination claims against the YMCA. Sall also does not attach to the Amended Complaint any documents demonstrating the filing of a pre-suit administrative charge.

To the extent the YMCA's Motion to Dismiss is based on statute-of-limitations and exhaustion grounds, I recommend denying the Motion and affording Sall an opportunity to amend the Amended Complaint to plead the dates of his employment with the YMCA, whether and when he filed a charge with the EEOC or HRC regarding his Title VII allegations against the YMCA, and whether and when he received a right-to-sue letter regarding that charge from the EEOC or HRC.

---

[10] Sall apparently filed a charge with the HRC in May 2017 (Doc. 39-1 at 7), alleging that he was terminated from his employment as a receptionist for the Chittenden County State's Attorney's Office "based on race, color, religion, national origin, ancestry, and place of birth" (*id.* at 2). Claims not raised in an EEOC charge may be brought in federal court if they are "reasonably related" to other claims that were raised in a charge filed with the agency. *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (internal quotation marks omitted). Claims are considered "reasonably related" only "if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Id.* (internal quotation marks omitted); *see Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008) (holding that the court should consider whether "the factual allegations made in the administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action or to have placed the employer on notice that such claims might be raised"). The factual allegations in Sall's May 2017 charge to the HRC pertain to the Department of State's Attorneys and Sheriffs and the Chittenden County State's Attorney's Office, and are not "reasonably related" to the factual allegations made against the YMCA in this lawsuit. Therefore, the May 2017 HRC charge does not satisfy Title VII's exhaustion requirement as to Sall's federal lawsuit against the YMCA.

19

III.    **Title VII of the Civil Rights Act of 1964**

Assuming Sall has filed a properly exhausted and timely complaint, the Court next considers whether he has adequately pleaded a Title VII claim against the YMCA.  The Amended Complaint appears to allege a hostile-work-environment claim under Title VII.  (*See* Doc. 7-1 at 27–35.)  Sall's Opposition to the YMCA's Motion to Dismiss also appears to add claims of discriminatory failure to promote and retaliation.  (*See* Doc. 97 at 1–20.)  The YMCA contends that, assuming Sall's claims are timely and properly exhausted, the claims should be dismissed for failure to allege the essential elements of a Title VII claim.

It is unlawful under Title VII for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  "Title VII thus requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).  To overcome a motion to dismiss a Title VII claim, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Id.* at 87.  The "ultimate issue in an employment discrimination case is whether the plaintiff has met h[is] burden of proving that the adverse employment decision was motivated at least in part by . . . a discriminatory reason."  *Id.* (internal quotation marks omitted).  At the pleadings stage, therefore, the plaintiff must allege that his employer "took adverse action against h[im] at least in part for a discriminatory reason, and []he may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference

of discrimination." *Id.* Even after *Twombly* and *Iqbal*, a plaintiff has only a "'*minimal* burden'

of alleging facts 'suggesting an inference of discriminatory motivation.'" *Id.* at 85 (quoting

*Littlejohn*, 795 F.3d at 310). "[T]he question is not whether a plaintiff is *likely* to prevail, but

whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful

discrimination, *i.e.*, whether plaintiffs allege enough to nudge[ ] their claims across the line from

conceivable to plausible." *Id.* at 87 (second alteration in original) (internal quotation marks

omitted).

In order to state a prima facie case of discrimination under Title VII, "the plaintiff does

not need substantial evidence of discriminatory intent." *Littlejohn*, 795 F.3d at 311. Rather, the

plaintiff need only plausibly plead "(1) that she is a member of a protected class, (2) that she was

qualified for the position she sought, (3) that she suffered an adverse employment action, and

(4) [that she] can sustain a *minimal* burden of showing facts suggesting an inference of

discriminatory motivation." *Id.* An "inference of discrimination" can arise from circumstances

including but not limited to "the employer's criticism of the plaintiff's performance in ethnically

degrading terms; or its invidious comments about others in the employee's protected group; or

the more favorable treatment of employees not in the protected group; or the sequence of events

leading to the plaintiff's discharge." *Id.* at 312 (internal quotation marks omitted).

### A.    Hostile Work Environment

The YMCA asserts that the Amended Complaint fails to plead an "adverse employment

action" (*see* Doc. 82 at 12–13), which is "a materially adverse change in the terms and conditions

of employment . . . [that is] more disruptive than a mere inconvenience or an alteration of job

responsibilities," *Atkins v. Rochester City Sch. Dist.*, 764 F. App'x 117, 119 (2d Cir. 2019)

(citations and internal quotation marks omitted). Examples of adverse employment actions

include "termination of employment, a demotion evidenced by a decrease in wage or salary, a

less distinguished title, a material loss of benefits, [and] significantly diminished material

responsibilities." *Id.* (alteration in original) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138

(2d Cir. 2003)). The Amended Complaint does not allege adverse employment actions such as

these. Nor does it clearly allege if, how, or when Sall's employment with the YMCA ended.

There are no specific allegations of demotion, reduced pay, or loss of benefits. (*See* Doc. 7-2 at

27–35.) Rather, the Amended Complaint states that Sall himself "ended [his] service with the

YMCA['s] Early Learning Program." (*Id.* at 2.)

     Contrary to the claim in the Amended Complaint that Sall ended his employment with the

YMCA, he states in his Opposition to the YMCA's Motion to Dismiss that he was told by

YMCA supervisors that he "was fired" and "that was how it ended" (Doc. 97 at 8), and that he

"was forced out of the YMCA by Mike Cioffi and Gary Vassar" (*id.* at 10). He further states in

his Opposition that his supervisors and coworkers at the YMCA harassed and intimidated him

"to try to force [him] out" (*id.* at 14–15), "created a position to oversee [his] work" (*id.* at 15),

"restricted [his] work to only answering phone calls, doing laundry, and scanning people" (*id.*),

and "constantly checked with [him] about [his] immigration status" (*id.*). None of these actions,

in and of themselves, constitute adverse employment actions. *See, e.g.*, *Mabry v. Neighborhood

Defender Serv.*, 769 F. Supp. 2d 381, 393 (S.D.N.Y. 2011) ("Excessive scrutiny and close

monitoring without more do not constitute adverse employment actions."); *Fraser v. Fiduciary

Tr. Co. Int'l*, No. 04 Civ. 6958(PAC), 2009 WL 2601389, at *6 n.7 (S.D.N.Y. Aug. 25, 2009)

("Relieving [plaintiff] of his responsibility for the client newsletter might constitute an alteration

of job responsibilities, but it certainly does not represent a significant diminution of those

responsibilities."), *aff'd*, 396 F. App'x 734 (2d Cir. 2010). Even if some conduct on behalf of

the YMCA toward Sall could amount to an adverse employment action—for example, Sall's claim in his Opposition that Cioffi and Vassar "withheld promotion from [him]" (Doc. 97 at 15)—Sall has not described either this conduct or his position(s) at the YMCA in sufficient detail for the YMCA to provide a response to the Amended Complaint.

The scope of Title VII, however, is not limited solely to employment actions with immediate economic or tangible consequences. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116–17 (2002). Where "the workplace is permeated with discriminatory intimidation, ridicule, and insult[] that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment," a plaintiff may allege a "hostile work environment" in violation of Title VII. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted); *see Littlejohn*, 795 F.3d at 320–21; *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 325 (N.D.N.Y. 2013) ("A hostile work environment constitutes an adverse employment action."). A hostile-work-environment claim includes both objective and subjective elements: "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (internal quotation marks omitted). Moreover, "[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (internal quotation marks omitted). "In determining whether a plaintiff suffered a hostile work environment, [the court] must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23).

In the Amended Complaint and in his Opposition to the YMCA's Motion to Dismiss, Sall describes several instances of allegedly discriminatory conduct during his employment at the YMCA. He alleges that the YMCA "allowed [him] to endure[] a sustain[ed] campaign" of racial, religious, and ethnic abuse (Doc. 7-2 at 27), and that he was "racial[ly] tormented, yelled [at], heckled, hounded, . . . , and taunted" at the YMCA (*id.* at 29). In his Opposition, Sall states that the YMCA was "[a] hostile, intimidating, and offensive place," and that racial and religious abuse, ethnic discrimination, and slandering occurred there. (Doc. 97 at 3.) He further states that people at the YMCA "hate[d]" him, "wanted [him] dead," and "prey[ed] on [him] day in and day out" because of his race, religion, and ethnicity. (*Id.* at 6.) More specifically, Sall states in his Opposition that his allegations against the YMCA are based in part on people at the YMCA "calling [him] sexist, misogynist, subjugator of women, nigger, and telling [him] the Holy Quran . . . promote[s] sexism and homophobia." (*Id.* at 7.)

Taking the Amended Complaint and Sall's Opposition to the YMCA's Motion to Dismiss together, Sall claims that his supervisors, colleagues, and others affiliated with the YMCA hated him, yelled at him, taunted and heckled him, demoralized him, embarrassed and humiliated him, called him names, ignored and renounced him, and "scapegoated" him. (*See generally* Docs. 7-2, 97.) In addition, Sall claims that he was the object of malicious schemes at the YMCA, including for example a "sexual harassment scheme to entrap [him]" by "encourag[ing] new female co[]workers to flirt with [him] and build a trust with [him] and then rescind consent." (Doc. 97 at 15.) These allegations may not support a finding of a hostile work environment that is so severe or pervasive to have altered the conditions of Sall's employment. *See, e.g.*, *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (concluding that no hostile work environment existed even though "defendants wrongly excluded [plaintiff] from meetings,

24

excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"); *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, No. 08 CV 7586(GBD), 2011 WL 4000997, at *11 (S.D.N.Y., Aug. 19, 2011) (finding that diminished job responsibilities, exclusion from staff meetings, deliberate avoidance, yelling, and talking down to, along with an increased workload of menial tasks, among other factors, was not enough to show that defendants' conduct was sufficiently severe or pervasive), *aff'd*, 488 F. App'x 530 (2d Cir. 2012).

"[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). And conduct that is "merely offensive" cannot support a hostile-work-environment claim, *Harris*, 510 U.S. at 21, as "[feelings and perceptions] of being discriminated against [are] not evidence of discrimination," *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) (alterations in original) (internal quotation marks omitted). The Supreme Court explained that "mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (citation and internal quotation marks omitted); *see Payton v. City Univ. of New York*, 453 F. Supp. 2d 775, 785 (S.D.N.Y. 2006) ("Conduct that is merely offensive, unprofessional, or childish cannot support a hostile work environment claim." (internal quotation marks omitted)).

The Amended Complaint contains numerous allegations of conduct that was offensive to Sall. In many instances, he does not state who made the allegedly offensive statements, or when and in what context they were made. Even where Sall connects particular statements to a specific individual, he frequently does not describe the individual's affiliation with the YMCA.

It is not enough for Sall to claim that he was "criticized, scapegoated, ignored, renounced, and abused" while employed at the YMCA (Doc. 7-2 at 27), without connecting some specific activity to particular individuals at the YMCA and without alleging facts linking that activity to Sall's race, religion, or ethnicity.  *See Pronin v. Raffi Custom Photo Lab., Inc.*, 383 F. Supp. 2d 628, 637 (S.D.N.Y. 2005) ("In determining whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative 'stray remark,' a court should consider . . . : (1) who made the remark, *i.e.*, a decision-maker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decision-making process.").

Even where the Amended Complaint alleges particular situations, individuals, or statements, the allegations do not raise an inference of discrimination.  For example, the Amended Complaint states that Jon Robbins, a coworker of Sall's, "kept following [Sall] behind the desk [and] . . . everywhere [he went]," making Sall feel "really threatened" (Doc. 7-2 at 32); "falsely accused [Sall] of destroying the YMCA washers" (*id.* at 33); and "interrupt[ed] or shout[ed] down . . . [Sall]" (*id.*).  The Amended Complaint further states that "Amanda," another of Sall's coworkers, "screamed at [Sall] and slammed the phone [down on him]."  (*Id.*)  The Amended Complaint alleges that another presumed coworker of Sall's "smirked, rolled her eyes, curled her lips, and g[a]ve [Sall] hateful stares" (*id.* at 28); and another moved to Vermont from Minnesota "with a deep hatred for African immigrants" (*id.* at 30), "attack[ing]" Sall by telling him that "the Somali population rob[s] Minnesota['s] [s]tate[] fund" and that "each Somali has two Social Security [c]ards that they use to collect benefits" (*id.* at 31).  Sall seems to concede

that there is little evidence of the motive for his YMCA coworkers' and supervisors' alleged

negative treatment of him: "I asked the [human resources person] . . . why these white people

keep coming after me.  I never g[o]t the answer, but the insinuation is it is my religious, ethnic,

and national origin that was causing the conflict."  (*Id.* at 32.)

The YMCA may not be held responsible for the alleged discriminatory comments of

Sall's coworkers, as opposed to his supervisors or managers at the YMCA, particularly if those

supervisors or managers were not aware of the coworkers' comments and those coworkers had

no power over Sall's employment position at the YMCA.  *See Wimmer v. Suffolk Cnty. Police

Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) (quoting *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir.

1978) ("[N]ot every act by an employee in opposition to racial discrimination is protected.  The

opposition must be directed at an unlawful employment practice of an employer, not an act of

discrimination by a private individual." (alteration in original)); *Silver*, 586 F.2d at 141 ("The

specific evil at which Title VII was directed was not the eradication of all discrimination by

private individuals, undesirable though that is, but the eradication of discrimination by employers

against employees."); *Toney v. Prob. Dep't*, No. CV 15–0561(JS)(GRB), 2016 WL 859381, at

*6 (E.D.N.Y. Jan. 28, 2016) (finding that stray race-based comment that "black people live in

filth" made by fellow employee with no decision-making authority over plaintiff's position was

insufficient to plead discrimination claim), *report & recommendation adopted*, 2016 WL 868206

(E.D.N.Y. Mar. 4, 2016); *White v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 1376(CM), 2014 WL

1273770, at *18 (S.D.N.Y. Mar. 28, 2014) (finding that "single stray remark from a co-worker

(not even a supervisor) d[id] not come close to rising to the needed level" to establish a hostile

work environment).

In sum, although Sall describes a work environment in which racial or ethnic animus was pervasive, the Amended Complaint's general and conclusory allegations are insufficient to state a plausible hostile-work-environment claim against the YMCA under Title VII. I therefore recommend granting the YMCA's Motion to Dismiss this claim.

### B.    Failure to Promote

Sall claims in his Opposition that, despite the fact that he met the requirements of the position, the YMCA "refused to promote [him] but allow[ed] [him] to fulfill a supervisor role for both the Winooski and Burlington YMCA without wage upgrade or promotion." (Doc. 97 at 20.) Sall further claims that he was not paid for training anyone, and he was relegated to a part-time employee. (*Id.*)

To establish a prima facie case of discriminatory failure to promote, a Title VII plaintiff must ordinarily demonstrate that "(1) []he is a member of a protected class; (2) []he 'applied and was qualified for a job for which the employer was seeking applicants'; (3) []he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709–10 (2d Cir. 1998) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004). The Amended Complaint fails to allege a plausible claim against the YMCA for failure to promote under Title VII because Sall has not identified his position at the YMCA; the promotion he sought; whether he was qualified for the promotion; whether he was rejected for the position; and whether the position remained open after his application was rejected. I therefore recommend dismissing Sall's failure-to-promote claim.

C.      Retaliation

In his Opposition to the YMCA's Motion to Dismiss, Sall claims that the YMCA

retaliated against him "for complaining about the racial, religious, and ethnic disparate

treatment." (Doc. 97 at 20.) He further claims that the YMCA restricted his work to only

answering phone calls, doing laundry, and scanning people; and that "the YMCA leadership

developed a sexual harassment scheme to entrap [him] and . . . used that to get rid of [him]."

(*Id.*)

"[F]or a retaliation claim to survive a . . . motion to dismiss, the plaintiff must plausibly

allege that: (1) defendants discriminated—or took an adverse employment action—against him,

(2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (quoting

42 U.S.C. § 2000e-3(a)). In the context of a retaliation claim, an adverse employment action

includes "any action that 'could well dissuade a reasonable worker from making or supporting a

charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53,

57 (2006)). To adequately plead causation in this context, the plaintiff "must plausibly plead a

connection between the act and his engagement in protected activity." *Id.* "A retaliatory

purpose can be shown indirectly by timing: protected activity followed closely in time by

adverse employment action." *Id.* Unlike Title VII discrimination claims, to show a causal

connection between the complaint against the employer and the retaliatory action, "the plaintiff

must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action,"

which means the adverse action "would not have occurred in the absence of the retaliatory

motive." *Id.* at 90–91 (internal quotation marks omitted).

Sall does not allege that he engaged in a "protected activity;" that is, an "action taken to

protest or oppose statutorily prohibited discrimination," *Cruz v. Coach Stores, Inc.*, 202 F.3d

560, 566 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-3), *superseded by statute on other grounds*.

Sall's only allegation on this point is in his Opposition to the YMCA's Motion to Dismiss, where

he claims that he "was retaliated against . . . for complaining about the racial, religious, and

ethnic disparate treatment." (Doc. 97 at 20.) Not only is the content of Sall's alleged complaint

lacking in specificity, but he also does not state to whom he complained, when, and in what

context. Sall also has not adequately alleged causation, i.e., that there was a connection between

Sall's alleged protected activity and any adverse employment action taken against him by the

YMCA. Title VII's anti-retaliation provision "protects an individual not from all retaliation, but

from retaliation that produces an injury or harm." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir.

2010) (internal quotation marks omitted).

The Amended Complaint does not allege a plausible retaliation claim against the YMCA

under Title VII. I therefore recommend dismissing this claim.

## IV. Sufficiency of Amended Complaint Under Rules 8, 10(b), and 12(e)

The YMCA alternatively argues that it "cannot reasonably be expected to respond to

Plaintiff's factual allegations and legal claims as they are currently set forth" (Doc. 106 at 4), and

therefore, pursuant to Federal Rule of Civil Procedure 12(e), the Court should order Sall to file a

second amended complaint, consisting of (a) only one pleading, (b) with consecutively numbered

paragraphs, and (c) with a more definite statement of the claims against the YMCA. (Doc. 82 at

16–17; Doc. 106 at 4–5.)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that the complaint in a civil

case contain "a short and plain statement of the claim showing that the pleader is entitled to

relief." Rule 8(d)(1) provides that each allegation in the complaint "must be simple, concise, and

direct." Rule 10(b) requires that a party state its claims in "numbered paragraphs, each limited as

far as practicable to a single set of circumstances."  Finally, Rule 12(e) allows a defendant to move for "a more definite statement of a pleading" where the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response."

The "key" to Rule 8(a)'s pleading requirement is "whether adequate notice [of the claim] is given."  *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004).  Adequate notice is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial."  *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995); *see Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  In other words, the complaint must leave the defendant with "a fair understanding of what the plaintiff is complaining about" and knowledge of "whether there is a legal basis for recovery."  *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).  Dismissal of a complaint for failure to comply with Rule 8's notice requirements is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  *Salahuddin*, 861 F.2d at 42.  When dismissal is granted on these grounds, the court "normally grants leave to file an amended pleading that conforms to the requirements of Rule 8."  *Id.*

Sall's claims against the YMCA do not meet the requirements of Rules 8(a)(2), 8(d)(1), and 10(b).  Although in his Opposition to the YMCA's Motion to Dismiss Sall specifies that the claims are being brought under Title VII, the Amended Complaint does not state the legal basis for Sall's claim against the YMCA.  The Amended Complaint also does not allege the relevant facts with the level of particularity required to permit a response.

## V.    Leave to Amend

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). An opportunity to amend is not required, however, where "[t]he problem with [the complaint] is substantive," such that "better pleading will not cure it" and thus amendment is "futile." *Id.* (a "futile request to replead," even by a *pro se* litigant, "should be denied"); *see Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) ("[L]eave to amend a complaint need not be granted when amendment would be futile."). An amendment is "futile" if the amended pleading would not withstand a motion to dismiss. *See Jones v. Phelps Corp.*, No. 3:14–cv–84 (GLS/DEP), 2014 WL 2195944, at *3 (N.D.N.Y. May 22, 2014).

As discussed above, Title VII is not a "general civility code," and complaints under this law will not be sufficient if they "attack[] the ordinary tribulations of the workplace, such as the sporadic use of abusive language . . . and occasional teasing." *Faragher*, 524 U.S. at 788 (internal quotation marks omitted). Although Sall's Amended Complaint as presently drafted is not definite enough to state claims under Title VII against the YMCA, a liberal reading of its allegations indicates that a valid claim might be stated. *Cuoco*, 222 F.3d at 112. I therefore recommend granting leave to amend the Amended Complaint.

Should he elect to file a second amended complaint, Sall should specify the legal basis of his claims against the YMCA,[11] state his claims in consecutively numbered paragraphs, incorporate his claims in one pleading, and more specifically state the factual basis of his claims against the YMCA, including but not limited to Sall's position at the YMCA, whether Sall

---

[11] This includes both Sall's Title VII claims against the YMCA as well as any § 1983 claims Sall attempts to plead against the YMCA.

requested and met the qualifications for a promotion at the YMCA, who at the YMCA engaged in conduct that allegedly discriminated against Sall, what that conduct was, and how that conduct was linked to Sall's race, religion, or ethnicity.  The second amended complaint should also plead—with specificity—the dates of Sall's employment with the YMCA, whether and when he filed a charge with the EEOC or HRC regarding his Title VII allegations against the YMCA, and whether and when he received a right-to-sue letter regarding that charge from the EEOC or HRC.

### Conclusion

For the reasons explained above, I recommend DENYING the YMCA's Motion to Dismiss (Doc. 82) with respect to the statute-of-limitations and exhaustion arguments, and GRANTING the Motion on the grounds of failure to plausibly allege claims of hostile work environment, failure to promote, and retaliation under Title VII, without prejudice.  I further recommend granting Sall leave to amend his Amended Complaint to more specifically allege his claims against the YMCA in compliance with the Federal Rules of Civil Procedure.  If Sall chooses to so amend, the new pleading shall be titled "Second Amended Complaint" and shall contain all claims against all YMCA parties, as it will supersede both the original Complaint and the Amended Complaint in all respects.  Failure to file such an amended complaint should result in the dismissal of Sall's claims against the YMCA with prejudice.

Dated at Burlington, in the District of Vermont, this 26th day of January 2022.

*/s/ Kevin J. Doyle*
United States Magistrate Judge


Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).