UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Abdullah Saajoh Sall,

        Plaintiff,

        v.

Sarah Fair George et al.,

        Defendants.

Civil Action No. 2:20–cv–214–cr–kjd

## REPORT AND RECOMMENDATION
(Doc. 41)

Plaintiff Abdullah Saajoh Sall, proceeding *pro se*, brings this action under 42 U.S.C. §

1983 against Defendants Sarah George, the Chittenden County State's Attorney's Office

(CCSAO), the Chittenden County Sheriff, Seven Days Newspaper, the Vermont State Police,

"Chittenden County Police Departments," the City of Burlington, Chittenden County, Local

Motion, the Greater Burlington YMCA, and others.[1]  (Doc. 7 at 1–3, 5.)  Sall alleges that starting

in 2012, he experienced discrimination in Chittenden County, Vermont based on his race,

religion, and national origin, causing him chronic trauma, depression, and anxiety.  (*Id.* at 3–5.)

He further claims that "[t]he City of Burlington and Chittenden [County] as a whole . . . is a

racist safe h[]aven city with a culture and tradition of subtle racism as the underbelly of the

---

[1] In the caption of the Amended Complaint, Sall identifies only five Defendants: "Chittenden County Townships, Chittenden County State Attorney's Office, Local Motion, Chittenden Police Departments, [and] Seven Day[s]."  (Doc. 7 at 1.)  On pages two and three of the Amended Complaint, Sall names several other Defendants, including Chittenden County State's Attorney Sarah George and the Vermont State Police, among others.  (*Id.* at 2–3.)  In the Amended Complaint's prayer for relief, Sall references additional Defendants, including the Greater Burlington YMCA and the Chittenden County Sheriff.  (*Id.* at 5.)  Sall attaches to the form Amended Complaint a 59-page document entitled "Amended Complaint[,] Abdullah Sall Self-[I]ntro," in which he lists some 35 Defendants including the Defendants identified above, 16 "Chittenden County townships," and 10 "Chittenden County Police Departments."  (Doc. 7-2 at 7.)

community" (Doc. 7-2 at 37), and that "[t]he residents of Burlington, Chittenden County, and Vermont convey their racial disdain in so many different ways" (*id.* at 38). As a black Muslim man who immigrated to the United States from Africa (*id.* at 3), Sall alleges that he has been "made to pay the price" in a culture that "sees black m[e]n as offenders, aggressive, or violent criminals" (*id.* at 38). Sall seeks $300 million dollars in restitution, to "help [account for] all the injustices [he] was made to endure." (Doc. 7 at 5.)

This Report and Recommendation addresses Defendants George and the CCSAO's Motion to Dismiss for Insufficient Service of Process.[2] (Doc. 41.) In their Motion, George and the CCSAO ("Defendants") move to dismiss the Amended Complaint's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(5). For the reasons discussed below, I recommend DENYING Defendants' Motion to Dismiss (Doc. 41), QUASHING Sall's improper service of Defendants, and GRANTING Sall 30 days to effectuate proper service on Defendants George and the CCSAO. Alternatively, counsel may accept service by mail on behalf of George and the CCSAO.

---

[2] Although the Amended Complaint initially lists George as a defendant in her "[o]fficial capacity" as "Chittenden County State Attorney" (Doc. 7 at 2) and does not list the CCSAO as a defendant (*id.* at 2–3), the body of the Amended Complaint includes the CCSAO in a list of defendants and omits reference to George in that list (Doc. 7-2 at 6). It is unclear whether Sall intends to proceed against both George and the CCSAO, especially given that his Opposition to their pending Motion to Dismiss addresses service of process only as to George and not the CCSAO. (*See* Doc. 80.) In any event, claims stated against George in an official capacity as a representative of the CCSAO are in essence claims stated against the CCSAO as an entity. *See McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 n.2 (1997) (noting that "a suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent, and that victory in such an official-capacity suit imposes liability on the entity that the officer represents" (alterations omitted) (internal citation and quotation marks omitted)); *see also Nolen v. City of Barre,* No. 2:10-CV-241, 2011 WL 805865, at *5 (D. Vt. Mar. 1, 2011) ("Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources." (internal quotation marks omitted)).

**Relevant Facts and Procedure**

**I.    Complaint and Amended Complaint**

Sall initially filed this action in the District of Massachusetts on November 12, 2020.

(Doc. 1.)  The case was transferred to this District approximately one month later.  (Docs. 3, 5.)

Sall filed the Amended Complaint on January 19, 2021.  (Doc. 7.)  He attaches two documents to

his Amended Complaint: (1) a "Final Determination" of the Vermont Human Rights

Commission (HRC), dated June 25, 2020, finding that the "Department of State's Attorneys and

Sheriffs [and] the [CCSAO] . . . illegally discriminated against . . . Sall . . . on the basis of

national origin, race, and skin color, in violation of Vermont's Fair Employment Practices Act"

(Doc. 7-1 at 2); and (2) a document titled "Amended Complaint[,] Abdullah Sall Self-[I]ntro,"

which serves as the primary factual basis for Sall's allegations in this case (Doc. 7-2).

The first document, referred to in this case as the HRC Report, describes in detail the

facts underlying Sall's allegations in this lawsuit against Defendants George and the CCSAO.

(Doc. 39-1 at 2–55.)  Specifically, the HRC Report states that sometime between February 2016

and January 2017, then-Chittenden County State's Attorney TJ Donovan hired Sall as a

receptionist for the CCSAO.  (*Id.* at 2.)  Soon afterwards, Donovan became the Attorney General

of Vermont, and the Governor appointed Sarah George the Chittenden County State's Attorney.

(*Id.*)  Eight days later, George terminated Sall, prompting him to file a charge with the HRC

"alleging discrimination based on race, color, religion, national origin, ancestry, and place of

birth."  (*Id.*)  In connection with the HRC investigation, the CCSAO claimed Sall's termination

resulted from his inability "to perform even the basic duties to which he was assigned," which

"compromised the functioning of the office."  (*Id.*)  Nonetheless, the HRC found "reasonable

grounds to believe that the [CCSAO] discriminated against [Sall] with respect to race, color, or

3

national origin." (Doc. 7-1 at 1.)

## II.    Attempted Service of Process on Defendants George and the CCSAO, and Defendants' Motion to Dismiss for Insufficient Service of Process

Following transfer of Sall's Complaint to this District, on January 4, 2021, the Clerk of Court issued summonses for several named Defendants, including George and the CCSAO. (*See* 1/4/21 ECF note.) Sall then filed an Amended Complaint on January 19, 2021 (Doc. 7), and the Clerk issued further summonses on January 20 and February 2, 2021, including for the CCSAO and George (*see* 1/20/21 and 2/2/21 ECF notes).

On February 19, 2021, Sall's process server, Vincent Konewko, returned 25 Proofs of Service regarding summonses issued in this case, including the two summonses at issue in Defendants' Motion. (*See* Docs. 13–37.) In one Proof of Service, Konewko attested that a summons "for . . . Abdullah Sall" was "personally served" on February 9, 2021 at "Sarah George, Chittenden County State Attor.[,] 32 Cherry St. #305."[3] (Doc. 18.) In another Proof of Service, Konewko attested that a summons "for . . . Abdullah Sall" was "personally served" on February 9, 2021 at "Chittenden County Sheriff[,] 70 Ethan Allen Dr.[,] South Burlington."[4] (Doc. 17.) Although the CCSAO is not mentioned in the latter Proof of Service (*see id.*), the court docket describes the filing as follows: "SUMMONS RETURNED Executed. Chittenden State Attorney's Office and Chittenden Sheriff served on 2/9/2021 . . . ." (2/19/21 ECF note re: Doc. 17.)

---

[3] George attests that "32 Cherry St." in Burlington, Vermont is the physical address of the CCSAO. (Doc. 41-1 at 1, ¶ 2.)

[4] As noted, both Proofs of Service indicate on the first line that the relevant summons is "for . . . Abdullah Sall." (Docs. 17, 18; *see also* Doc. 63.) The Court assumes this was an error, as the purpose of these Proofs of Service was to document Konewko's service of process on Defendants Sarah George and the CCSAO, not on Plaintiff Abdullah Sall, who had paid Konewko to serve process on the Defendants in this case. (*See* Doc. 80 at 3–4.)

On February 26, 2021, Defendants filed their Motion to Dismiss for Insufficient Service of Process, contending that Sall failed to properly serve either George or the CCSAO with summonses and the Amended Complaint.  (Doc. 41.)  Defendants attach to the Motion the Affidavit of Sarah George, in which George states that she "was never personally served with a summons or complaint in this lawsuit, and no such summons or complaint was otherwise delivered to [her]."  (Doc. 41-1 at 2, ¶ 9.)  George further states, however, that on February 10, 2021, a CCSAO "Administrative Coordinator" "found a manila envelope in the office's mailbox while checking the day's mail" and "brought that envelope to [George]."  (*Id.*, ¶ 6.)  According to George, that envelope contained her summons and the Amended Complaint.  (*Id.*, ¶ 8.)  Finally, George states in her Affidavit that the CCSAO is "an office within the Vermont Department of State's Attorneys and Sheriffs" (*id.*, ¶ 3), and that she "ha[s] not been authorized to receive service of process on behalf of th[at] Department" (*id.*, ¶ 5).

 Defendants argue that: (1) Sall's attempt to serve George by leaving an envelope containing her summons and the Amended Complaint in a mailbox at her office did not satisfy the service requirements of either Federal Rule of Civil Procedure 4(e) or Vermont Rule of Civil Procedure 4(d) (*id.* at 4–6); and (2) Sall has not attempted "in earnest" to serve the CCSAO, as the relevant Proof of Service does not reference either the CCSAO or the CCSAO's office location (*id.* at 6 (citing Doc. 17)).  Therefore, Defendants contend that the Amended Complaint's claims against them should be dismissed for insufficient service of process.

## III.  Sall's Attempt to Correct Service, and Defendants' Supplemental Memorandum in Support of Motion to Dismiss for Insufficient Service of Process

Sall filed a new Proof of Service on March 8, 2021, which the court docket describes as a "CORRECTED SUMMONS RETURNED[.]  Executed Chittenden State Attorney's Office, Sarah George served on 2/9/2021."  (3/8/21 ECF note re: Doc. 63.)  In this Proof of Service,

Konewko states that he "served" a summons "for . . . Abdullah Sall" on February 9, 2021 "for Sarah George[,] Chittenden County State Attorney at the Costello Courthouse."  (Doc. 63.)  The Proof of Service continues: "A gentleman stationed inside the doors of the Courthouse enquired of my business[;] I told him of my intent[,] and he stated that he would see that [George] gets it." (*Id.*)

In response, Defendants filed a supplemental brief, claiming that not only does this new Proof of Service contradict the corresponding prior Proof of Service (Doc. 18), but it still "reflects insufficient service of process" with respect to both George and the CCSAO.  (Doc. 70 at 3.)

On March 17, 2021, Sall filed an undated "Domestic Return Receipt" which appears to indicate that an article addressed to "Sarah George[,] State Attorney" at the same "32 Cherry St[.]" address as indicated in the first Proof of Service regarding service of process on George (*see* Doc. 18) was received by "C-19."  (Doc. 78.)

## IV.    Sall's Opposition to Motion to Dismiss for Insufficient Service of Process

On March 18, 2021, Sall filed an Opposition to Defendants' Motion to Dismiss, contending that service was properly executed.  (Doc. 80.)  Specifically, he claims that he "reached out to [his] friend Vincent Konewko and asked him if he c[ould] serve the summonses and complaints on [Sall's] behalf."  (*Id.* at 3.)  According to Sall, he told Konewko that such service "has to be done within a timeframe and [that Sall was] willing to pay [Konewko] . . . for the work."  (*Id.*)  Sall "asked [Konewko] to take a day off from his work . . .  [to] serve the summonses and complaint[]."  (*Id.*)  Sall further states that Konewko "went online and read [about] how to serve summons[es] in Vermont" in accordance with the Local Rules and the Federal Rules of Civil Procedure.  (*Id.*)  Sall recounts that he discussed these rules with

Konewko, and they also discussed possible difficulties in service "due to the Covid-19 restrictions and [resulting limitations regarding] building accessibility." (*Id.*)

Sall states that he "personally placed Defendant Attorney Sarah George['s] summons and complaint in [an] envelope" to Konewko, and paid for three-day shipping via Fed Ex to send the summons and complaint to Konewko. (*Id.* at 4.) He further states that he actively monitored the package through the night until it arrived to Konewko, and he told Konewko that "serving Attorney Sarah George properly should be his priority." (*Id.*) According to Sall, on February 9, 2021, at 10:10 a.m. he received a text that read, "Sarah George Chittenden State Attorney Served!" (*Id.* at 5.)

Sall claims "[t]here were three attempts to inform[] . . . George of this lawsuit": first, by "copy of the letter that [Sall] received from the Honorable Judge Allison D. Burroughs [of the United States District Court for the District of Massachusetts]"; second, "through a constable"; and third, "through the United States Postal Service." (Doc. 80 at 9; *see* Doc. 80-3.) He states that he "ha[s] made all attempt[s] sincerely and honestly to serve all the Defendants identified in this case" (*id.*), and that "all the [D]efendants knew ahead [of time] that there [wa]s a lawsuit against them pending at the United States District Court of Vermont long before [Konewko] went out to serve them" (*id.* at 11). Sall argues that there is "no good cause failure [of service] here," but rather, mere "dissatisfaction" with service. (*Id.* at 6.) He urges the Court to move beyond the service issue and consider the merits of his claims against Defendants. (*Id.* at 15.) Barring that, Sall offers to re-serve George, stating: "If the Court [will] allow[,] it is not that difficult to re-serve[] Defendant Attorney Sarah . . . ." (*Id.* at 6; *see id.* at 12 ("I am happy to serve [George] again.").)

On March 30, 2021, Sall filed a supplement to his Opposition, asserting that if any aspect of Konewko's service of process on Defendants was improper, it was the result of "innocent mistake." (Doc. 86 at 2.)

<u>Analysis</u>

## I.    Standard of Review

"[W]hen a defendant moves to dismiss [for insufficient service of process] under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (first alteration in original). To meet this burden, the plaintiff must "mak[e] a *prima facie* showing, through specific allegations and supporting materials, that service was proper." *Zherka v. Ryan*, 52 F. Supp. 3d 571, 576 (S.D.N.Y. 2014); *see Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002) (holding that in considering a motion to dismiss for insufficient service of process, court "must look to matters outside the complaint"). "Conclusory statements are insufficient to overcome a defendant's sworn affidavit that he was not served." *Darden*, 191 F. Supp. 2d at 387. If the court finds that service of process was insufficient, it "has discretion to dismiss the action, but dismissal is not mandatory." *Id.* (citing Fed. R. Civ. P. 12(b)(5)).

In deciding a Rule 12(b)(5) motion to dismiss for insufficient service of process, courts "must look to [Federal Rule of Civil Procedure] 4, which governs the content, issuance, and service of a summons." *Corley v. Vance*, 365 F. Supp. 3d 407, 431 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020). If a plaintiff fails to serve a defendant in accordance with Rule 4 "within 90 days after the complaint is filed," the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If, however, the plaintiff shows "good cause" for the

failure to serve, the court "must extend the time for service for an appropriate period." *Id.*

"Courts generally will find good cause only where the failure to effect timely service was the

result of circumstances beyond [the] plaintiff's control, and was not the result of mere

inadvertence, mistake[,] or misplaced reliance." *Madden v. Town of New Haven*, No. 1:07-CV-

111, 2008 WL 2483295, at *2 (D. Vt. June 17, 2008) (internal quotation marks omitted). "[P]*ro*

*se* status alone does not constitute good cause." *Id.*

The purpose of Rule 4 is to ensure "that service is reasonably calculated to provide a

defendant with actual notice of the action." *United States v. Mellon*, 719 F. App'x 74, 76 (2d

Cir. 2018). "Where service of process is insufficient, '[t]he courts have broad discretion to

dismiss the action or to retain the case but quash the service that has been made on defendant . . .

.'" *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985) (alteration in

original) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1354, at 585

(1969)).

## II.     Sall's Attempted Service of Process on Defendants George and the CCSAO

Sall has not adequately served process on either George or the CCSAO under the

applicable federal and state rules.

### A.     Sall did not adequately execute service of process on George under Federal Rule of Civil Procedure 4(e).

Federal Rule of Civil Procedure 4(e) provides that service of process upon an individual

from whom a waiver of service has not been obtained may be effectuated by:

> (1) following state law for serving a summons in an action brought in courts of
> general jurisdiction in the state where the district court is located or where service
> is made; or
>
> (2) doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to the individual

personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  Vermont Rule of Civil Procedure 4(d)(1) provides that personal service of a summons and complaint upon an individual shall be made as follows:

by delivering a copy of the summons and . . . complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process, provided that if the agent is one designated by statute to receive service, such further notice as the statute requires shall be given.

Vt. R. Civ. P. 4(d)(1).

In Sall's first Proof of Service regarding George, process server Konewko indicates that he "personally served" George on February 9, 2021 at "Sarah George, Chittenden County State Attor.[,] 32 Cherry St. #305" (Doc. 18), which is the physical address for the CCSAO (Doc. 41-1 at 1, ¶ 2).  But George attests that she was never "personally" served; rather, she received the summons and a copy of the Amended Complaint on February 10, 2021, a day later than the date indicated in the Proof of Service, from the CCSAO's "Administrative Coordinator," who had found the documents in an envelope in the CCSAO's office mailbox.  (*Id.* at 2, ¶ 6; *see id.*, ¶ 8.) In Sall's second Proof of Service regarding George, process server Konewko indicates that he "served" George on February 9, 2021 at "the Costello Courthouse," and that "[a] gentleman stationed inside the doors of the Courthouse . . . stated that he would see that [George] [received the documents]."  (Doc. 63.)

10

These Proofs of Service are inconsistent with each other.  (*Compare* Doc. 18 *with* Doc. 63.)  Setting aside the inconsistency, neither Proof of Service demonstrates effective service on George, as delivering documents to an individual by (a) leaving the documents in an office mailbox where the individual works, (b) handing the documents to someone who is not an agent authorized to receive service of process for the individual, or (c) handing the documents to someone other than the individual at a location that is not the individual's usual place of abode, does not constitute effective service of process under the applicable rules.  *See* Fed. R. Civ. P. 4(e); Vt. R. Civ. P. 4(d)(1); *see also Chandler v. Cent. Vt. Pub. Serv. Corp.*, No. 1:11-CV-131-JGM, 2012 WL 966491, at *2 (D. Vt. Mar. 21, 2012) (finding state defendants had not been properly served, where summonses and complaint "were left with an office manager rather than being personally served, delivered to [d]efendants' homes, or served in some other fashion that would comply with either state or federal law"); *Chandler v. Branchaud*, No. 1:11-CV-22-JGM, 2011 WL 4068004, at *5 (D. Vt. Sept. 13, 2011) (finding insufficient service of process where administrative assistant at defendant's office was not authorized to accept service of process on defendant's behalf, and defendant was not present in office when documents were delivered). George's actual receipt of the summons and Amended Complaint a day after they were purportedly delivered either to the CCSAO mailbox or to a man at the Costello Courthouse does not cure the insufficient service.  *See Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991) ("reject[ing] the notion that 'actual notice' suffices to cure a void service"); *Chandler*, 2011 WL 4068004, at *5 (holding "[t]he fact that [defendant] may have subsequently taken possession of the [relevant] papers is insufficient").

Sall appears to have attempted to correct his initial improper service of George by mailing the summons and Amended Complaint to her at the 32 Cherry Street address via

certified mail, return receipt requested. (*See* Doc. 78, "Domestic Return Receipt"; *see also* Doc. 80 at 7.) But it is unclear from the document filed to demonstrate such service (Doc. 78) who received the mailing, and there is no indication on the document filed or elsewhere in the record that George herself received it. In any event, Sall could not have accomplished service of process on George via certified mail, as neither Federal Rule 4(e)(2) nor Vermont Rule 4(d)(1) allows it.[5] *See Green v. Jacobsen*, No. 97 CIV. 6652 (BSJ), 2004 WL 487323, at *1 (S.D.N.Y. Mar. 12, 2004) ("[S]ending a summons and complaint to a party's work address via certified mail does not satisfy Fed. R. Civ. P. 4(e)."); *Thorpe v. Dumas*, 788 F. App'x 644, 648 (11th Cir. 2019) ("Service by certified mail generally does not constitute 'delivery' under subsections of Rule 4." (citing cases)); *see also Madden*, 2008 WL 2483295, at *1 ("[S]ervice by mail does not satisfy the 'delivered' requirement of Federal Rule 4(j)."); *Bowers v. Janey*, 468 F. Supp. 2d 102, 106–07 (D.D.C. 2006) (finding that mailing copies of summons and complaint to individual defendants did not satisfy Federal Rule 4(e)(2)).

Therefore, Sall has not served George in her official capacity in accordance with Federal Rule 4(e).

## B.    Sall did not adequately execute service of process on George under Federal Rule 4(j)(2).

Alternatively, Sall might have served George under Federal Rule of Civil Procedure 4(j)(2) because he is suing George in her official capacity as the Chittenden County State's Attorney.[6] (*See* Doc. 7 at 2.) Rule 4(j)(2) provides:

---

[5] Although the Vermont Rules of Civil Procedure contain several specific exceptions for service by mail, none of them apply here. *See* Vt. R. Civ. P. 4(f), (g).

[6] The Second Circuit has not definitively determined whether Rule 4(e) or 4(j) is the more appropriate rule for service of process on government defendants sued in their official capacities. *See Rashada v. City of Buffalo*, No. 11CV873A, 2013 WL 474751, at *3 n.3 (W.D.N.Y. Feb. 6, 2013) (stating that the Second Circuit "has not . . . addressed" issue of whether service of a defendant sued in his or her official capacity must be made under Rule 4(j), and noting that "other courts have held that state officials must be served under Rule 4(e) even when sued in their

> A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:
>
> (A) delivering a copy of the summons and of the complaint to its chief executive officer; or
>
> (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

Sall has not met these requirements. First, he has not delivered a copy of George's summons and Amended Complaint to the chief executive officer of the CCSAO. In her Affidavit, George states that the CCSAO is "an office within the Vermont Department of State's Attorneys and Sheriffs," and the "Executive Director" of that Department is "John Campbell, Esq." (Doc. 41-1 at 2, ¶¶ 3, 4.) Even assuming service on Campbell would suffice under the Rule (i.e., assuming the "Executive Director" of the Vermont Department of State's Attorneys and Sheriffs is the equivalent of the "chief executive officer" of the CCSAO for purposes of service of process), there is no indication that the summons and Amended Complaint were delivered to Campbell. Nor is there any indication that these documents were delivered to the chief executive officer of any other "[Vermont]-created governmental organization." Fed. R. Civ. P. 4(j)(2).

Sall has also failed to serve process on George "in the manner prescribed by [Vermont's] law for serving a summons or like process on [a state] defendant." Fed. R. Civ. P. 4(j)(2)(B). Vermont Rule of Civil Procedure 4(d)(2) states that a plaintiff must execute personal service on

---

official capacity"); *see also Stoianoff v. Comm'r of Motor Vehicles*, 208 F.3d 204, 2000 WL 287720 (Table), at *1 (2d Cir. 2000) (reviewing whether service on government defendant was proper under Rule 4(j) and observing that service "may be effected pursuant to Rule 4(e), which provides for service upon individuals generally"); *El Ex-Relatione Dawes v. Whitehead*, No. 3:18-CV-02033 (CSH), 2019 WL 5394578, at *4 (D. Conn. Oct. 22, 2019) (applying both Rule 4(e) and 4(j)); *Norwood v. Salvatore*, No. 3:12-CV-1025 MAD/DEP, 2013 WL 1499599, at *4 (N.D.N.Y. Apr. 10, 2013) (applying Rule 4(j) to service of process on town "Code Enforcement Officer" sued in his official capacity). Given the lack of clarity on the issue, this Report and Recommendation analyzes whether Sall complied with either Rule 4(e) or 4(j) as to his service of process on George in her official capacity.

"the State of Vermont or any agency or officer thereof,[7] by delivering a copy of the summons and of the complaint to the Attorney General or the Deputy Attorney General." Vt. R. Civ. P. 4(d)(2). There is no evidence that Sall has delivered the relevant documents to Vermont's Attorney General or Deputy Attorney General.

Sall has thus failed to serve George in her official capacity under Federal Rule 4(j)(2).

### C.    Sall did not adequately execute service of process on the CCSAO.

For the same reasons Sall has not properly served process on George under Federal Rule of Civil Procedure 4(j)(2), he has also not properly served process on the CCSAO under the same Rule. Rule 4(j)(2) applies to the CCSAO as a "state-created governmental organization" (as stated in the Federal Rule), or an "agency" of the State of Vermont (as stated in Vermont Rule 4(d)(2)).[8] Therefore, for Sall to have properly served the CCSAO, he was required to deliver a copy of the summons and Amended Complaint either to the CCSAO's "chief executive officer,"[9] Fed. R. Civ. P. 4(j)(2)(A), or to Vermont's Attorney General or Deputy Attorney

---

[7] Solely for purposes of this Report and Recommendation, the Court considers the CCSAO a state agency, rather than a county agency, making George an officer of a state agency and thus subject to service of process under Vermont Rule 4(d)(2). *See Óneill v. Rutland Cnty. State's Att'ys Off.*, No. 2:16-CV-196, 2016 WL 7494857, at *4, 5, 6 (D. Vt. Dec. 29, 2016) (finding the Rutland County State's Attorney's Office to be an "arm of the state" for purposes of Eleventh Amendment immunity because although the Office "operates primarily on a county-wide basis" and "consists entirely of individuals elected in county elections without any direct involvement from the State of Vermont," it was "created by Vermont's Constitution and governed by state statute," its budget is "derived directly and exclusively from funds authorized and dis[bu]rsed by the Vermont Legislature as part of the state budget," and it "perform[s] functions that either are traditionally those of state governments or are in furtherance of State of Vermont business"); *see also In re Wakefield*, 107 Vt. 180, 177 A. 319, 323 (1935) ("A state's attorney in this state is not merely a prosecuting officer in the county in which he is elected. He is also an officer of the state, in the general matter of the enforcement of the criminal law. It is the state, and not the county, that pays his salary and official expenses."). (*See* Doc. 41-1 at 2, ¶ 3 ("[The] CCSA[O] is an office within the Vermont Department of State's Attorneys and Sheriffs . . . , and the Department is a Vermont state agency.").)

[8] *See* Footnote 7.

[9] Defendants have not apprised the Court of the name of the CCSAO's "chief executive officer," and the Court is unable to "accurately and readily determine[]" this information "from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). As noted earlier, George attests in her Affidavit that the CCSAO "is an office within the Vermont Department of State's Attorneys and Sheriffs," and the "Executive Director" of that Department is "John Campbell, Esq." (Doc. 41-1 at 2, ¶¶ 3, 4.) Therefore, delivery of the summons and Amended Complaint to Campbell at the Vermont Department of State's Attorneys and Sheriffs would meet Federal Rule

General, *id.* at 4(j)(2)(B); Vt. R. Civ. P. 4(d)(2).  There is no evidence that Sall delivered the documents to any of these individuals.

According to the evidence before the Court, Sall has not attempted to serve the CCSAO in any capacity, as none of the Proofs of Service for summonses served in this case reference the CCSAO.  Although the Court docketed ECF Doc. No. 17 as a returned summons regarding "Chittenden State Attorney's Office and Chittenden Sheriff," the CCSAO is not listed or referenced in any way in the corresponding Proof of Service.  (*See* Doc. 17.)  Rather, the Proof of Service states that a summons "for . . . *Abdullah Sall*" was "personally served" on February 4, 2021 "at . . . *Chittenden County Sheriff*," and the address provided is not the 32 Cherry Street address where the CCSAO is located.  (*Id.* (emphases added); *see* Doc. 41-1 at 1, ¶ 2.)  On its face, this does not demonstrate service of process on the CCSAO.

The Proofs of Service indicating that the summons and Amended Complaint were delivered to George at the CCSAO's 32 Cherry Street location (Doc. 18) and to "[a] gentleman stationed inside the doors of the [Costello] Courthouse" (Doc. 63) are also inadequate with respect to service of process on the CCSAO, particularly given that the summonses referenced in both Proofs of Service indicate that they are "for . . . Abdullah Sall" and not for anyone at the CCSAO.  Even if they stated that they were "for" the CCSAO generally, or an individual at the CCSAO other than the chief executive officer, this service of process would be insufficient under the applicable federal and state rules, which require delivery of the summons and Amended Complaint either to the CCSAO's chief executive officer or to Vermont's Attorney General or Deputy Attorney General.  *See* Fed. R. Civ. P. 4(j)(2); Vt. R. Civ. P. 4(d)(2).

---

4(j)(2)(A)'s requirement for service of process on a state-created governmental organization by "delivering a copy of the summons and . . . complaint to its chief executive officer."

III.    **Remedy**

Sall's failure to adequately execute service of process on George and the CCSAO does

not necessarily require dismissal of the claims against these Defendants. *See Bender v. Gen.*

*Servs. Admin.*, No. 05 CIV. 6459 (GEL), 2006 WL 988241, at *4 (S.D.N.Y. Apr. 14, 2006).

"Where service has not been proper, the [c]ourt has broad discretion either to dismiss the action

or to quash the improper service and extend the time for service." *Id.* As noted earlier, Rule

4(m) provides that if a plaintiff shows "good cause" for the failure to serve, the court "*must*

extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m) (emphasis added).

In determining whether a plaintiff has shown "good cause," "courts weigh the plaintiff's

reasonable efforts and diligence against the prejudice to the defendant resulting from the delay."

*DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010). Neither "a mistaken

belief that service was proper" nor "neglect and inadvertence" "suffice to support good cause."

*Jonas v. Citibank, N.A.*, 414 F. Supp. 2d 411, 416 (S.D.N.Y. 2006). Rather, "[g]ood cause is

generally found only in exceptional circumstances where the plaintiff's failure to serve process

in a timely manner was the result of circumstances beyond its control." *E. Refractories Co. v.*

*Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505 (S.D.N.Y. 1999) (internal quotation marks

omitted); *see Lopez v. United States*, 129 F. Supp. 2d 1284, 1295 (D.N.M. 2000) ("The 'good

cause' standard, as interpreted by the courts, is quite restrictive. Inadvertence, negligence,

ignorance of the service requirements, and reliance on a process server have all been determined

not to constitute good cause."), *aff'd*, 21 F. App'x 879 (10th Cir. 2001).

"[E]ven where there is no good cause shown," "district courts have the discretion to grant

extensions of the service period." *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007)

(citing *Henderson v. United States*, 517 U.S. 654, 662–63 (1996) ("[C]ourts have been accorded

discretion to enlarge the [service] period 'even if there is no good cause shown.'" (quoting Fed. R. Civ. P. 4(m) Adv. Comm. Notes))); *see Gerena v. Korb*, 617 F.3d 197, 201 (2d Cir. 2010) ("[The Second Circuit] ha[s] interpreted . . . [R]ule [4(m)] to give wide latitude to courts in deciding when to grant extensions on time to serve, including permitting courts to grant extensions even absent good cause."). Particularly in cases where the defendant received "actual notice" of the lawsuit despite improper service, "the Second Circuit has repeatedly held that 'Rule 4 of the Federal Rules is to be construed liberally to further the purpose of finding personal jurisdiction.'" *Galea v. Law Offices of Cary Alan Cliff*, No. 3:19-CV-225 (SRU), 2021 WL 1090783, at *4 (D. Conn. Mar. 22, 2021) (quoting *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986)). The Second Circuit has also held that "incomplete or improper service will lead the court to dismiss the action *unless it appears that proper service may still be obtained*." *Romandette*, 807 F.2d at 311 (internal quotation marks omitted).

When considering whether to extend the prescribed period for service under Rule 4, a district court is afforded ample discretion to weigh the "overlapping equitable considerations" involved in determining whether good cause exists and whether an extension may be granted in the absence of good cause. *Zapata*, 502 F.3d at 197. "Courts commonly consider several factors in determining whether to grant an extension," including:

> (1) "whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision."

*Madden*, 2008 WL 2483295, at *2 (quoting *Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 58 (E.D.N.Y. 2006)); *see Zankel v. United States*, 921 F.2d 432, 436 (2d Cir. 1990).

17

George contends that dismissal is the appropriate remedy for Sall's insufficient service of process because he "affirmatively made filings to the Court representing that he has, in fact, personally served Attorney George—thereby triggering her responsive pleading deadline and invoking potential default ramifications—when that is not true." (Doc. 41 at 5–6.) Sall responds that "[t]here is no good cause failure" with respect to his attempted service of process on George, asserting that George is merely "dissatisf[ied] [with] service." (Doc. 80 at 6.) He further argues that he "ha[s] made all attempt[s] sincerely and honestly to serve all the Defendants identified in this case." (*Id.* at 9.) Specifically, Sall explains that he "was unable to supervise" his process server, Konewko, because "[Sall] live[s] 1,108.6 miles from Burlington, Vermont"; but he "paid [Konewko] . . . and trusted him to execute the service process properly." (Doc. 86 at 2.) Sall states that he instructed Konewko to read the Federal Rules of Civil Procedure prior to serving Defendants, and that he discussed these Rules, along with "Covid-19 restrictions and building accessibility [issues]," with Konewko over the phone. (Doc. 80 at 3.) Any improprieties in Konewko's service of George and the CCSAO, according to Sall, were "the result of innocent mistake," given that Konewko had never before served process. (Doc. 86 at 2.) Sall proposes that "[m]aybe[] the solution . . . is to re-serve [George]," and he asserts that he is "ready to do [that], if the Court permit[s] [him] to do so." (Doc. 80 at 6.)

Although Sall has not demonstrated the "exceptional circumstances" required to show "good cause" for his failure to properly serve George and the CCSAO, *E. Refractories Co.*, 187 F.R.D. at 505, the relevant factors favor granting him additional time to serve these Defendants because: (a) George and the CCSAO have had actual notice of Sall's alleged claims against them since approximately three weeks after the Amended Complaint was filed (*see* Doc. 7; Doc. 41-1 at 2, ¶¶ 6, 8), *see Romandette*, 807 F.2d at 311; (b) Sall is representing himself *pro se* and does

18

not appear to have attempted to conceal the defects in service but rather has attempted to correct them, and the failure to effect service does not appear to have been the result of lack of diligence on Sall's part, *see St. John Rennalls v. Cnty. of Westchester*, 159 F.R.D. 418, 420 (S.D.N.Y. 1994) ("When dealing with *pro se* parties, courts interpret the rules dealing with service of process liberally.") (*see* Doc. 80 at 3–10; Doc. 86 at 2); (c) Sall's claims against George and the CCSAO are not, "on their face, manifestly futile," *Bender*, 2006 WL 988241, at *4 (*see* Doc. 7-1; Doc. 39-1); and (d) neither George nor the CCSAO will suffer prejudice if Sall is granted an extension of time to serve them.

Regarding the last factor, Defendants do not identify the prejudice they might suffer from granting Sall an extension of time to serve them. In some cases, particularly where discovery has already occurred and the time to file motions for summary judgment has expired, "delay in serving a defendant may impair its ability to defend against a claim on the merits." *AIG Managed Mkt. Neutral Fund v. Askin Cap. Mgmt., L.P.*, 197 F.R.D. 104, 111 (S.D.N.Y. 2000) (extending time to serve even though discovery had closed and time for filing summary judgment motions had passed, but citing cases where dismissal may be appropriate, including when witnesses are unavailable, evidence has been destroyed, or a named defendant has died). In this case, no discovery has occurred and no motions affecting George and the CCSAO have been filed other than the Motion to Dismiss under review.

To the extent that Sall's claims have any merit, they should be heard. *See Tishman v. Associated Press*, No. 05 CIV. 4278 (GEL), 2005 WL 3466022, at *1 (S.D.N.Y. Dec. 16, 2005) ("Rule [4(m)] provides trial courts with considerable flexibility, and reflects a healthy distaste for dismissing an action based on technical defects in service."); *Williams v. Gen. Servs. Admin.*, 582 F. Supp. 442, 443 (E.D. Pa. 1984) ("[T]he avoidance of dismissals for improper service has the

19

2:20-cv-00214-cr    Document 157    Filed 02/04/22    Page 20 of 21

desirable objective of promoting . . . the disposition of cases on their merits." (quoting 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1083 (1969))). Defendants' receipt of "actual notice" of Sall's claims against them soon after those claims were filed "militates against a finding of prejudice [towards Defendants] since the 'core function' of service is to supply notice 'in a manner and at a time that afford the defendant a fair opportunity to answer the complaint and present defenses and objections.'" *AIG Managed Mkt. Neutral Fund*, 197 F.R.D. at 111 (quoting *Henderson*, 517 U.S. at 672); *see Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F. Supp. 1237, 1251 (S.D.N.Y. 1977) ("[C]ompliance with the rules governing service of process is to be construed in a manner reasonably calculated to effectuate their primary purpose: to give the defendant adequate notice that an action is pending.") (citing *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310 (1945)).

Accordingly, the interests of justice counsel against dismissal of Sall's claims against George and the CCSAO, and favor granting Sall an extension of time to serve these Defendants.

## Conclusion

Sall's service on both George and the CCSAO was inadequate. However, the proper remedy is not dismissal of Sall's potential claims against these Defendants without considering their merits. I therefore recommend DENYING Defendants' Motion to Dismiss for Insufficient Service of Process (Doc. 41). I further recommend QUASHING Sall's service of process with respect to Defendants George and the CCSAO, and GRANTING Sall 30 days to effectuate proper service, as explained in this Report and Recommendation. Sall may accomplish such service as follows:

- Regarding George, pursuant to either Federal Rule 4(e) or (j), by: (a) delivering a copy of the summons and Amended Complaint to her personally; (b) leaving the

documents at her dwelling or usual place of abode with someone of suitable age and discretion who resides there; (c) delivering the documents to an agent authorized by appointment or by law to receive service of process on her behalf; (d) delivering the documents to John Campbell, Executive Director of the Vermont Department of State's Attorneys and Sheriffs; or (e) delivering the documents to Vermont's Attorney General or Deputy Attorney General.

- Regarding the CCSAO, pursuant to Federal Rule 4(j), by: (a) delivering a copy of the summons and Amended Complaint to John Campbell, Executive Director of the Vermont Department of State's Attorneys and Sheriffs; or (b) delivering the documents to Vermont's Attorney General or Deputy Attorney General.

Alternatively, defense counsel may advise the Court and Sall that it will accept service by mail of the relevant summonses and the Amended Complaint on behalf of George and the CCSAO, and the Court Clerk will effectuate that service.

Dated at Burlington, in the District of Vermont, this 4th day of February 2022.

*/s/ Kevin J. Doyle*
Kevin J. Doyle
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).