U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 MAR 20 PM 3:38

CLERK
BY  /s/ lAw
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ABDULLAH SALL, )
)
Plaintiff, )
)
v. ) Case No. 2:20-cv-00214
)
SEVEN DAYS, INC. et al., )
)
Defendants. )

**OPINION AND ORDER
DENYING DEFENDANT SEVEN DAYS, INC.'S SPECIAL MOTION TO
STRIKE AND GRANTING DEFENDANT'S MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT**
(Docs. 181 & 182)

On April 18, 2022, Plaintiff Abdullah Sall, a Missouri resident representing himself, filed a Second Amended Complaint ("SAC") against Defendant Seven Days, Inc. ("Seven Days"). Plaintiff alleges claims of defamation in violation of 28 U.S.C. § 4101, retaliation in violation of 42 U.S.C. § 1985(3), and conspiracy in violation of 42 U.S.C. § 1985. Seven Days filed a special motion to strike the SAC under 12 V.S.A. § 1041 (Doc. 181) and also moves to dismiss the SAC for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Doc. 182.)

## I. Relevant Procedural History.

On November 12, 2020, Plaintiff filed this action in the United States District Court for the District of Massachusetts. Following transfer of the case to this district, on January 19, 2021, Plaintiff filed an Amended Complaint. On February 23, 2021, Seven Days filed motions to dismiss and to strike the Amended Complaint.

On January 11, 2022, the Magistrate Judge issued a Report & Recommendation ("R & R") recommending that the court grant Seven Days' motion to dismiss without leave to amend and deny as moot the special motion to strike. (Doc. 149.) On January 24, 2022, both parties timely filed objections to the R & R. Plaintiff objected to the

Magistrate Judge's conclusions regarding the alleged role of Seven Days in harming his reputation by publishing "a hit-piece article on behalf of Defendant Chittenden County State Attorney's office to enhance[] Defendant Chittenden State Attorney Sarah George's public image and to damage[] [his] public image and destroy any job prospect." (Doc. 152 at 1-2) (emphasis omitted). He argued that equitable tolling should apply to prevent dismissal on statute of limitations grounds. Seven Days objected to the Magistrate Judge's recommendation that its special motion to strike be denied as moot.

On March 4, 2022, the court adopted in part the R & R. The court held Plaintiff's § 1983 claims failed because there was no factual or legal basis to conclude Seven Days is a state actor and that the applicable statute of limitations barred Plaintiff's defamation claims arising from the article. The court further determined a reporter's allegedly defamatory question was based on a true factual predicate and an additional allegedly defamatory statement made by Seven Days' "founder" was a non-actionable opinion. *See* Doc. 164 at 6-7. As a result, leave to amend was granted "solely for the purpose of asserting a claim of equitable tolling with regard to [Plaintiff's] defamation claim" based on the February 28, 2017 article. *Id.* at 8. Plaintiff was warned in bold letters that his SAC must be filed "by March 22, 2022 or [his] case will be dismissed." *Id.* at 9 (emphasis omitted).

Citing the Vermont Supreme Court, the court ruled that: "[G]ranting a motion to dismiss does not moot the motion to strike because the issue of attorney's fees remains a live controversy . . . [because] the plain language 'shall award' [in § 1041(f)(1)] indicates that the award of fees is mandatory when a motion to strike is granted." (Doc. 164 at 9-10) (first and third alterations in original) (internal quotation marks and citations omitted). The court therefore declined to adopt the R&R's recommendation to deny Seven Days' special motion to strike as moot and indicated that if Plaintiff filed a SAC, Seven Days could renew its special motion to strike.

## II.     The SAC's Allegations.

On April 18, 2022,[1] Plaintiff filed the thirty-two-page SAC against Seven Days, alleging that he is "Black, Muslim, and an African immigrant to the United States of America." (Doc. 173 at 2, ¶ 1.) Defendant Seven Days is alleged to be a digital and print newspaper distributed weekly and based in Burlington, Vermont. Plaintiff asserts the court "has jurisdiction of Plaintiff's 28 U.S.[C.] § 4101 federal law claims pursuant to 28 U.S.C. § 1331, and [§] 1343(a)(4) as this case involves questions of federal law." *Id.* at 3.

Plaintiff alleges that on February 28, 2017, Seven Days, in collaboration with the Chittenden County State Attorney's Office, and "with reckless disregard for the truth, and [Plaintiff's] safety[,] published an article that exposed [Plaintiff] to public anger, hatred, contempt, scorn, and obloquy."[2] *Id.* at 4, ¶ 1. He asserts that "Seven Days recklessly dramatized [his] firing and negatively attracted public attention on [him], and destroyed [his] public dignity in violation of 28 U.S.[C.] § 4101." *Id.* at 5, ¶ 2. Plaintiff states the article was published four weeks and four days "after the 'Muslim travel ban' went into effect[.]" *Id.* at 8, ¶ 9. He asserts he was "mocked, ridiculed, vilified, harassed, intimidated, and shunned in clear breach[] of the First Amendment[.]" *Id.* at 9, ¶ 12.

Plaintiff alleges the article was a "hit-piece" designed to "ruin" his life and that it "used isolated and misplaced quotes to damage [his] public dignity." (Doc. 173 at 11, ¶ 14.) He defines "hit-piece" as a "published article or post aiming to sway public opinion by presenting false or biased information in a way that appears objective and truthful." *Id.* n.2. He contends Seven Days published the article with ill will and actual malice during Plaintiff's campaign for a City Council position. Plaintiff asserts Seven Days approached him seeking to write an article to introduce him to the community to be published in early January of 2017 but Seven Days then purposefully delayed the article until after his

---

[1] In light of Plaintiff's self-represented status and in the absence of an objection from Seven Days, the court accepts the SAC as timely filed.

[2] Although Plaintiff did not attach the February 28, 2017 Seven Days' article to the SAC, the court considers it to be incorporated by reference in the SAC "given Sall's identification of the relevant article and his substantial reliance on it[.]" *See* Doc. 149 at 4 & n.6 (adopted in part by Doc. 164). Seven Days attached the article to its motion to dismiss the SAC. *See* Doc. 182-1.

3

employment at the Chittenden County State's Attorney's Office was terminated. He contends Seven Days had "insider information" and "wait[ed] for [Chittenden County State's Attorney] Sarah George to . . . terminate[] [Plaintiff's] employment." *Id.* at 16, ¶ 23. Plaintiff asserts "Seven Days simply provided a platform to the Chittenden County State Attorney's Office and Chittenden County State Attorney Sarah George to distort [his] character." *Id.* at 25, ¶ 41.

Following publication of the Seven Days article, Plaintiff asserts he was "subjected to dirty looks, hateful stares, rolling eyes, and curled-up lips by the white population. It felt like I was living during the days of Jim Crow. I was so devastated, I was contemplating suicide[.]" *Id.* at 13, ¶ 18. He contends he could not obtain employment in Vermont.

Plaintiff alleges a claim of defamation of character under 28 U.S.C. § 4101 and contends that "[a]ny reasonable person" who reads the February 28, 2017 Seven Days' article "understand[s] the statement to be defamatory." (Doc. 173 at 27, ¶ 2.) He asserts the "[s]tatements published by the Defendant Seven Days were false because I completed a six-month probationary period and had not been written up for poor work performance." *Id.* ¶ 5.

Plaintiff also claims retaliation under 42 U.S.C. § 1985(3) and alleges that Seven Days and the Chittenden County State's Attorney's office "launched a campaign of intimidation and harassment" against Plaintiff's former Attorney John Franco to force him to withdraw from Plaintiff's case and to scare Plaintiff. *Id.* at 30, ¶ 11.

Finally, Plaintiff alleges a claim of "conspiracy to incite hostilities/deprive[] rights" under 42 U.S.C. § 1985 asserting that "Seven Days conspired with defendant Chittenden County State [Attorney] Sarah George, defendant Chittenden County State Attorney's Office, and defendant [D]epartment of Sheriff to write[] a hit-piece to injure [Plaintiff's] reputation; deny [Plaintiff] privileges and immunities; and sabotage [Plaintiff's] election." *Id.* at 31, ¶ 15 (capitalization omitted). As relief, Plaintiff seeks $500 million dollars.

## III. Conclusions of Law and Analysis.

### A. The Court's Subject Matter Jurisdiction.

Federal courts "have an independent obligation to consider the presence or absence of subject matter jurisdiction[.]" *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006). "[S]ubject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "[T]he party asserting federal jurisdiction bears the burden of establishing jurisdiction" exists. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006). Generally, "federal courts have subject matter jurisdiction either on the basis of substance, where there is a federal question, or on the basis of citizenship, where the requirements for diversity jurisdiction are satisfied." *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 337 n.3 (2d Cir. 2006).

Plaintiff contends the court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4). "A plaintiff properly invokes § 1331 [federal question] jurisdiction when [he] pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). Section 1343(a)(4) confers jurisdiction on federal courts to hear claims "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights[.]" 28 U.S.C. § 1343(a)(4). Although not mentioned by Plaintiff, § 1343(a)(1) provides for federal jurisdiction over claims "[t]o recover damages for . . . any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42[.]" *Id.* § 1343(a)(1).

In this case, Plaintiff was granted leave to amend his complaint to assert a claim of equitable tolling with regard to his defamation claim. Plaintiff's attempt to assert new claims under 42 U.S.C. § 1985 in the SAC is improper and those claims are DISMISSED. *See Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for limited purpose and the plaintiff

filed an amended complaint exceeding the scope of the permission granted."). As a result, § 1343(a)(4) does not provide a basis for the court to exercise subject matter jurisdiction.

28 U.S.C. § 4101 also does not provide a cause of action for defamation and pertains only to foreign defamation judgments. *See Thomas v. Brasher-Cunningham*, 2020 WL 4284564, at *10 (D. Conn. July 27, 2020) (explaining § 4101 does not create a cause of action for defamation but instead defines defamation "in the context of a statute that allows for actions recognizing foreign defamation judgments"). Plaintiff's remaining claim of defamation is a state-law claim that does not raise a federal question. *See Steffens v. Kaminsky*, 2020 WL 2850605, at *2 (D. Conn. June 2, 2020) ("Although the tort of defamation is a well-recognized cause of action under state common law, federal law does not create a general cause of action or provide a basis for federal question jurisdiction for defamation."). Thus, § 1331 does not provide a basis for the court to exercise subject matter jurisdiction.

To raise a claim under diversity jurisdiction, 28 U.S.C. § 1332 requires that the amount in controversy in the case exceeds $75,000, exclusive of interest and costs, and that the matter is "between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1). In other words, the plaintiff must be from a different state than every defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir. 2014) (explaining complete diversity requires that "all plaintiffs . . . be citizens of states diverse from those of all defendants"). Because Plaintiff is a Missouri resident and Seven Days is based in Vermont, and the SAC seeks $500 million dollars in damages, the court may exercise diversity jurisdiction over Plaintiff's remaining state-law defamation claim.

### B. Seven Days' Special Motion to Strike.

In response to the SAC, Seven Days has renewed its special motion to strike. Under Vermont law, "[a] defendant in an action arising from the defendant's exercise, in connection with a public issue, of the right to freedom of speech or to petition the government for redress of grievances under the U.S. or Vermont Constitution may file a special motion to strike[.]" 12 V.S.A. § 1041(a); *see also Country Home Prods., Inc. v.*

6

*Banjo*, 2015 WL 13505447, at *7 (D. Vt. Oct. 14, 2015) (acknowledging the "purpose of § 1041 is to discourage litigants from filing baseless lawsuits known as Strategic Lawsuits Against Public Participation (SLAPP)" and encourage free speech and public participation by "allowing speedy dismissal of meritless lawsuits") (citation and internal quotation marks omitted). The "exercise, in connection with a public issue, of the right to freedom of speech or to petition the government for redress of grievances under the U.S. or Vermont Constitution" is defined as:

> (1) any written or oral statement made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;
>
> (2) any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;
>
> (3) any written or oral statement concerning an issue of public interest made in a public forum or a place open to the public; or
>
> (4) any other statement or conduct concerning a public issue or an issue of public interest which furthers the exercise of the constitutional right of freedom of speech or the constitutional right to petition the government for redress of grievances.

*Id.* § 1041(i)(1)-(4).

Under Vermont law, filing a special motion to strike stays all but "limited discovery" which a court may order to assist in its decision-making, and a hearing must be held within thirty days. *Id.* § 1041(c)(1)-(2), (d). The court "shall grant" the motion "unless the plaintiff shows that: (A) the defendant's exercise of his or her right to freedom of speech and to petition was devoid of any reasonable factual support and any arguable basis in law; and (B) the defendant's acts caused actual injury to the plaintiff." *Id.* § 1041(e)(1). "In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Id.* § 1041(e)(2). If the motion is granted, "the court shall award costs and reasonable attorney's fees to the defendant." *Id.* § 1041(f)(1).

Although this court has previously held that special motions to strike under 12 V.S.A. § 1041 can be brought in federal court,[3] these decisions predate the Second Circuit's decision in *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020). In that case, the Second Circuit held that California's anti-SLAPP law, which "requires outright dismissal unless the plaintiff can establish a probability that he or she will prevail on the claim" conflicted with Fed. R. Civ. P. 12 and 56 and was therefore "inapplicable in federal court." *Id.* at 86-87 (quoting Cal. Civ. Pro. Code § 425.16(b)(3)) (internal quotation marks and brackets omitted). The relevant test is "whether a Federal Rule of Civil Procedure answers the same question as the special motion to strike." *Id.* at 87 (alterations adopted) (internal quotation marks and backets omitted). "If so, the Federal Rule governs[.]" *Id.* Because California's statute "establishes the circumstances under which a court must dismiss a plaintiff's claim before trial, a question that is already answered (differently) by Federal Rules 12 and 56[,]" California's anti-SLAPP law "abrogates" Rule 12(b)(6)'s plausibility standard and "nullifies" Rule 56's requirement that a case proceed to trial if a party can "identify[] any genuine dispute of material fact[.]" *Id.* (internal quotation marks and brackets omitted); *see also CoreCivic Inc. v. Candide Grp. LLC*, 2021 WL 1267259, at *5 (N.D. Cal. Apr. 6, 2021) (recognizing that "the Second Circuit's opinion . . . invalidated the entirety of the California anti-SLAPP statute in federal court").

Although Seven Days concedes that the Second Circuit has held that California's anti-SLAPP statute is inapplicable in federal court, it argues that under Second Circuit precedent, the Vermont anti-SLAPP statute may be applied in federal court. The court disagrees.

Vermont's anti-SLAPP statute permits a judge at the pleading stage to weigh

---

[3] *See, e.g., Soojung Jang v. Trs. of St. Johnsbury Acad.*, 331 F. Supp. 3d 312, 333-337 (D. Vt. 2018); *Country Home Prods., Inc. v. Banjo*, 2015 WL 13505447, at *7 (D. Vt. Oct. 14, 2015); *Ernst v. Kauffman*, 50 F. Supp. 3d 553, 563 (D. Vt. 2014); *Bible & Gospel Tr. v. Twinam*, 2008 WL 5245644, at *1 (D. Vt. Dec. 12, 2008), *modifying report & recommendation*, 2008 WL 5216845 (D. Vt. July 18, 2008).

evidence and resolve disputed issues of fact. It does not require the judge to construe evidence in the light most favorable to a plaintiff; it does not require the court to accept well-pleaded factual allegations as true; and it allows—and may even require—a plaintiff to present evidence beyond the pleadings to sustain the plaintiff's burden of proof. *See Chandler v. Rutland Herald Publ'g*, 2015 WL 7628687, at *3 (Vt. Nov. 19, 2015) ("[Plaintiff] provided no affidavits (nor any specific information) in support of his assertions. His generalized contentions are insufficient to meet his burden on the statute."); *Ernst v. Kauffman*, 50 F. Supp. 3d 553, 563 (D. Vt. 2014) (holding "unsworn pleading . . . fails to meet plaintiffs' burden"). In these respects, Vermont's anti-SLAPP statute directly conflicts with Fed. R. Civ. P. 8[4] and 12(b)(6)[5] and seeks to import elements of Fed. R. Civ. P. 56 into the pleading process. Because Vermont's anti-SLAPP statute "establishes the circumstances under which a court must dismiss a plaintiff's claim before trial, a question that is already answered (differently) by Federal Rules 12 and 56[,]" it does not apply in federal court.[6] *La Liberte*, 966 F.3d at 87 (internal quotation marks and citation omitted).

Seven Days nonetheless urges the court to rely on *Adelson v. Harris*, 774 F.3d 803 (2d Cir. 2014), wherein the Second Circuit concluded that the immunity and fee-shifting provisions of Nevada's anti-SLAPP law did not "squarely conflict with a valid federal

---

[4] Rule 8 requires "[a] pleading that states a claim for relief [to] contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "Each allegation [in a pleading] must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

[5] Under Rule 12(b)(6), dismissal is only appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000). In reviewing a complaint, a court must "accept as true the material facts alleged in the complaint and draw all reasonable inferences in plaintiffs' favor." *Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2015) (alterations adopted) (internal quotation marks and brackets omitted). A court cannot "weigh the evidence[,]" *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017), or assess credibility. *See Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017).

[6] The Federal Rules "govern in diversity cases in federal court[] unless [they] violate the Rules Enabling Act." *La Liberte v. Reid*, 966 F.3d 79, 88 (2d Cir. 2020) (internal quotation marks omitted). The Second Circuit has determined that "Rules 12 and 56 comply with the Rules Enabling Act[.]" *Id.* (internal quotation marks omitted).

9

rule." 774 F.3d at 809. *Adelson* is inapposite because the competing rules were not in conflict.

Acknowledging that this court applied Vermont's anti-SLAPP statute in cases prior to *La Liberte*, the Second Circuit has now more recently instructed "federal courts must apply Rules 12 and 56 instead of" a special motion to strike. *La Liberte*, 966 F.3d at 88. Accordingly, Vermont's anti-SLAPP statute does not apply in federal court as it abrogates Fed. R. Civ. P. 12(b)(6) and 56. For this reason, Seven Days' special motion to strike (Doc. 181) is DENIED.

### C. Seven Days' Motion to Dismiss.

#### 1. Standard of Review.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

To determine whether this standard is satisfied, the court employs a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted). First, the court "must accept as true all of the [factual] allegations contained in a complaint" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Second, the court analyzes whether the complaint's "'well-pleaded factual allegations' . . . 'plausibly give rise to an entitlement to relief.'" *Hayden*, 594 F.3d at 161 (quoting *Iqbal*, 556 U.S. at 679). The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

Courts afford pleadings filed by self-represented parties "special solicitude." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (internal quotation marks omitted). The court is therefore required to read the SAC liberally and to hold it "to less stringent

10

standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). All complaints, however, must contain "sufficient factual matter[] . . . to state a claim" for relief. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted); Fed. R. Civ. P. 8, 12.

### 2. Plaintiff's Defamation Claim Arising out of the February 28, 2017 Article is Barred.

In its March 4, 2022 Opinion & Order, the court explained the requirements of the doctrine of equitable tolling and granted Plaintiff leave to amend "solely for the purpose of asserting a claim of equitable tolling" with regard to his defamation claim based on the February 28, 2017 article. (Doc. 164 at 8.) Seven Days moves to dismiss Plaintiff's SAC and argues, among other things, that Plaintiff fails to allege any facts that support the application of equitable tolling to excuse his failure to comply with the three-year statute of limitations. *See* 12 V.S.A. § 512(3) (requiring claims for "slander and libel[]" be filed "within three years after the cause of action accrues[]").

Under Vermont law, "[e]quitable tolling applies either where the defendant is shown to have actively misled or prevented the plaintiff in some extraordinary way from discovering the facts essential to the filing of a timely lawsuit, or where the plaintiff has timely raised the same claim in the wrong forum." *Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 11, 186 Vt. 605, 610, 987 A.2d 258, 264. The Second Circuit has held that "[s]tatutes of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for [his] lateness in filing." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004).

The application of this doctrine is not, however, without limits. "Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Id.* If a plaintiff could have filed in a timely manner through the exercise of due diligence, equitable tolling does not apply even if there are extraordinary circumstances. *See Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990) ("We have generally been much less forgiving in receiving late filings where the claimant failed to

11

exercise due diligence in preserving his legal rights."); *see also Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) ("The word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.").

Like the Amended Complaint, the SAC does not contain a claim for the application of equitable tolling. In the absence of allegations that Seven Days actively misled or prevented Plaintiff in some extraordinary way from discovering the facts essential to the timely filing of his lawsuit, the statute of limitations is not tolled with regard to his defamation claim. Because under Vermont law Plaintiff's action was required to be filed by February 28, 2020, but Plaintiff did not file his initial Complaint until November 12, 2020, Seven Days' motion to dismiss must be GRANTED.

## IV.     Leave to Amend.

The Second Circuit has cautioned that a court "should not dismiss a pro se complaint without granting leave to amend at least once[.]" *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (per curiam) (internal quotation marks omitted). However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

As the court has previously determined, leave to amend would be futile for all but Plaintiff's defamation claim based on the February 28, 2017 article. Plaintiff has not requested a further opportunity to amend his pleading. Because Plaintiff has already had multiple opportunities to amend his complaint and Seven Days has twice responded, the court declines to grant leave to amend sua sponte. *See Horoshko v. Citibank, N.A.*, 373 F.3d 248, 250 (2d Cir. 2004) (noting a district court does not "abuse[] its discretion in not permitting an amendment that was never requested").

## CONCLUSION

For the reasons set forth above, Seven Days' special motion to strike (Doc. 181) is DENIED and its motion to dismiss (Doc. 182) is GRANTED. Plaintiff's Second Amended Complaint (Doc. 173) is DISMISSED.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 20th day of March, 2023.

Christina Reiss, District Judge
United States District Court